## In re STROBEL'S ESTATE.

(Supreme Court, Appellate Division, First Department. May 15, 1896.)

1. TRANSFER TAX—ALIENAGE—TREATY WITH WURTTEMBERG.

The tax imposed by Laws 1887, c. 713, on "all property which shall pass by will or, by the intestate laws of this state," is a succession tax, and not a "duty of detraction," within the treaty of 1844 between the kingdom of Wurttemberg and the United States, providing that "where, on the death of any person holding real property within the territories of one party, such real property would, by the laws of the land, descend on a citizen or subject of the other, were he not disqualified by alienage, such citizen or subject shall be allowed the term of two years to sell the same * * * and to withdraw the proceeds thereof * * * exempt from all duties of detraction."

2. TREATIES—ABROGATION—CHANGE OF GOVERNMENT.

The treaty of 1844 between the kingdom of Wurttemberg and the United States, providing that where land owned by a citizen or subject of one country would descend to a citizen or subject of the other, were he not disqualified by alienage, such citizen or subject may sell the same, and withdraw the proceeds, exempt from all duties of detraction, was abrogated by the treaty of December 11, 1871, between the United States and the emperor of Germany, who under the constitution of the empire, of which the kingdom of Wurttemberg had become a part, represents the empire among nations, enters into alliances with foreign countries, etc.

Appeal from surrogate's court, New York county.

Proceeding for the appraisal of property of John Strobel, deceased, under Laws 1887, c. 713, imposing a tax of 5 per cent. on "all property which shall pass by will or by the intestate law of the state" to collaterals. From an order affirming an order fixing and determining the tax on the property of decedent, G. F. Strobel and J. F. Strobel appeal. Affirmed.

The opinion of Surrogate ARNOLD is as follows:

This is an appeal from an order fixing the transfer tax on the estate of the decedent, who died intestate in the city of New York, of which place he was a resident, on April 10, 1892. The appellants are his two nephews, who are citizens of Wurttemberg, and each of whom became entitled to one-fourth of his real estate, as heirs at law. The claim made by them on this appeal is that the interest in the decedent's real estate which passed to them is exempt from succession tax, by virtue of the provisions of the treaty entered into between the kingdom of Wurttemberg and the government of the United States in the year 1844; and special stress is laid, in support of this contention, upon article 2 of the said treaty, which reads as follows: "Where, on the death of any person holding real property within the territories of one party such real property would by the laws of the land descend on a citizen or subject of the other, were he not disqualified by alienage; such citizen or subject shall be allowed a term of two years to sell the same, which term may be reasonably prolonged according to circumstances, and to withdraw the proceeds thereof without molestation, and exempt from all duties of detraction." Duties of detraction are "a tax levied upon the removal from one state to another of property acquired by succession or testamentary disposition." Wheat. Int. Law, p. 166. This tax was formerly levied very generally where foreigners or emigrants withdrew property acquired by the death of relatives from the state of which the decedent was a citizen. The state of New York levies no such tax. The droit de detraction did not operate against residents of the state imposing the duty. The statute of this state which appellants claim is obnoxious to the treaty, so far as they are concerned, operates indiscriminately against all natural persons, whether foreigners or its own citizens. It is not a tax upon removal, but upon the right to take;

a limitation upon the power of a testator to give, and upon the right of an heir or next of kin to receive. Remove the disqualification of alienage, and what is it the heir is entitled to sell? Clearly, the property or interest therein which would pass to a citizen heir,—in the case at bar, 95 per cent. of such interest. While the provisions of the treaty must be liberally construed, it must be manifest that the court will not strain towards such a construction as will give greater advantages or privileges in the acquisition of property to foreigners than is accorded to our own citizens. I suppose it is fair to assume that the contracting parties intended that a consistent treaty should result from their negotiations. Then why, if the appellants' contention is correct, should there be a discrimination between personalty, passing as such, and the proceeds of real estate? If we adopt the appraiser's construction of the treaty, the instrument is harmonious, and results in what I conceive is the end sought in such affairs, viz. the granting and receiving by the citizens of each of the contracting states of reciprocal rights, and forbidding the exercise of any right of forfeiture because of alienage except as reserved thereby. By the terms, "droit d'aubaine," "droit de retraite," "droit de detraction," and "duties of detraction," were not intended taxes upon succession to, or transfers of, property. Frederickson v. State of Louisiana, 23 How. 445. In that case, Fink, a naturalized citizen of the United States, residing in Louisiana, bequeathed certain legacies to citizens of Wurttemberg. By a statute of Louisiana, it is provided that "each and every person now being domiciliated in this state, and not being a resident of any other state or territory in the Union, who shall be entitled, whether as heir, legatee or donee, to the whole or any part of the succession of a person deceased, whether such person shall have died in this state or elsewhere, shall pay a tax of ten per cent. on all sums or on the value of all property which he may have actually received from said succession, or so much thereof as is situated in this state, after deducting all debts due by the succession." The court held that article 3 of the treaty, which was relied upon as prohibiting the levy of such a tax upon the legacies, did not apply to the case of a citizen or subject of either country residing at home, and disposing of property there in favor of a citizen or subject of the other, which construction is directly opposed to the contention of the appellants here.

Independent of any construction of the treaty referred to, notice must be taken of the fact that a constitution was entered into by the king of Prussia, in the name of the "North German Confederation," the king of Bavaria, the king of Wurttemberg, the grand duke of Baden, and the grand duke of Hesse, which was proclaimed by Emperor William as the constitution of the German empire on the 16th day of April, 1871. Wurttemberg, by treaty of November 25, 1870, had given her adhesion to this constitution, as the constitution of the German confederation. Provision is made, under title 4 of the constitution of the German empire, for the making of treaties with foreign nations in the manner following: "To the king of Prussia shall belong the presidency of the confederation, and he shall have the title of 'German Emperor.' The emperor shall represent the empire among nations, declare war and conclude peace in the name of the same; enter into alliance and other conventions with foreign countries, accredit ambassadors and receive them." See "Foreign Constitutions," published under chapter 8, Laws 1893; chapter 228, Laws 1894; Convention Manual of the Sixth New York State Constitutional Convention, of 1894. Thereafter the president of the United States of America, and his majesty the emperor of Germany, king of Prussia, in the name of the German empire, agreed upon "a convention respecting consuls and trade-marks," which was concluded December 11, 1871. Ratifications were exchanged at Berlin April 29, 1872, and it was proclaimed June 1, 1872. Under article 10 of this convention is to be found the following provisions: "In all successions to inheritances, citizens of each of the contracting parties shall pay to the country of the other such duties only as they would be liable to pay if they were citizens of the country in which the property is situated or the judicial administration of the same may be exercised." This provision would seem to have superseded that of the Wurttemberg treaty of 1844, relied on by the appellants here. The order appealed from is affirmed.

Argued before BARRETT, RUMSEY, WILLIAMS, PATTERSON, and INGRAHAM, JJ.

J. A. Straley, for appellants.
Emmet R. Olcott, for respondent.

PER CURIAM. We agree with the conclusion arrived at by the learned surrogate that the tax in question is not a detraction tax, but a succession tax, and that the appellant has no more right to complain of the succession tax than he would have of the ordinary annual tax upon property which is imposed by the statute. He is treated precisely the same as our own citizens are treated, receiving precisely what they receive. He certainly ought not to be entitled to receive more than they do. All that is granted to him by the treaty is that the property to which he succeeds under the laws of the state shall not be taxed when he comes to take the property, or its proceeds, out of the state.

Order affirmed, with $10 costs and disbursements.