HOWARD MOODY, as Executor, Petitioner, v. OTTO A. HAGEN, Elina A. Skarderud, Emelia Mattison, and All Other Persons Interested in the Estate of Martin A. Hagen, Deceased, Respondents, and The Tax Commission of the State of North Dakota, Intervener.

(L.R.A.—,—, 162 N. W. 704.)

Nonresident aliens — inheritance tax — resident aliens — Constitution — statute — laws — general nature — uniform operation — amity and commerce — treaty of — between United States — foreign countries — heirs — disposition of inheritances — naturalization papers.

1. Section 8977 of the Compiled Laws of 1913, which imposes a tax of 25 per cent on the inheritance of nonresident aliens as opposed to a tax of 1½ per cent on the inheritances of citizens and *resident aliens* residing in the United States, is not in violation of § 20 of art. 1 of the Constitution of North Dakota, which provides that "no citizen or class of citizens shall be granted privileges or immunities which upon the same terms shall not be granted to all citizens." Nor is it in violation of § 11 of art. 1, which provides that "laws of a general nature shall have a uniform operation." Nor, where the decedent was a citizen of the United States and residing therein, is it in violation of art. 6 of the Treaty of Amity and Commerce between Norway and the United States, and which provides that "the subjects of the contracting parties in the respective states may fully dispose of their goods and effects either by testament, donation, or otherwise, in favor of such persons as they think proper; and their heirs, in whatever place they shall reside, shall receive the succession *ab intestato*, either in person or by their attorney,

Note.—An alien's right to inherit and the validity as to him of inheritance taxes have been the subject of much litigation. For an exhaustive compilation of authorities see the following notes: Generally, on alien's right to inherit, 31 L.R.A. 177; on effect of treaties upon alien's right to inherit, 32 L.R.A. 177, and L.R.A.1915E, 327; on validity of discrimination against aliens by inheritance tax law as affected by treaty with foreign government, 33 L.R.A.(N.S.) 632, and L.R.A.1916A, 474; on effect of state Constitutions and statutes upon the question of inheritance by or from an alien, 31 L.R.A. 85; upon the effect of state statutes and Constitutions upon inheritance through an alien, 31 L.R.A. 146; as to the constitutionality of succession taxes, generally, 33 L.R.A.(N.S.) 592; as to the nature of inheritance tax, 33 L.R.A.(N.S.) 606.

On right of alien to transmit or receive an inheritance, see note in 12 Am. St. Rep. 93.

without having occasion to take out letters of naturalization. These inheritances, as well as the capitals and effects, which the subjects of the two parties, in changing their dwelling, shall be desirous of removing from the place of their abode, shall be exempt from all duty, called 'droit de detraction,' on the part of the governments of the two states respectively."

**Inherit — take by will — right to — natural and inalienable rights — are not — Constitution — state — Federal.**

2. The right to inherit or to take by will and the right to devise and to bequeath are not natural and inalienable rights, nor are they guaranteed by the state or Federal Constitutions.

**Alien — property — by descent — by will — right of — permissive legislation — dependent on.**

3. The alien, in the absence of permissive legislation, has never been allowed, as against the sovereign state, to take by descent or even by will.

**Common law — rights under — changed by statute — granting right to take by will or descent.**

4. Statutes which change the common law and which allow aliens to take by will or to inherit are not to be looked upon in the light of a recognition or extension of any previously existing right belonging to such aliens, but rather as a fresh grant or a right or a statute of grace which the state chooses to confer.

**Tax — inheritance — heir — legatee — title to property — right to devise or bequeath — right to receive.**

5. There is a wide distinction between a tax on the right to export or to carry out of a state property after it has passed to an heir or legatee and has become his, and a tax on the property before it passes to him, or a tax upon his right to receive or of the deceased to devise and bequeath.

**Foreign country — citizen of, residing therein — inheritance — in this country — tax on — resident aliens — probate — will.**

6. A citizen of a foreign country, residing therein, has, in the absence of express treaty right, no reason to complain that his inheritance is taxed more than that of a fellow alien who resides in the United States, but not in the state where the deceased resided or of the probate of the will.

**State — wealth of — important to other states — statute — class legislation — discrimination — resident aliens — nonresident aliens — property of.**

7. The wealth and prosperity of California or of any other state in the Union is of vital importance to the people of North Dakota. A statute, therefore, which discriminates in the matter of the amount of an inheritance tax between a citizen and resident of Norway and a citizen of Norway residing in California or any other state of the Union, is not for that reason void on the ground of class legislation.

**Amity and commerce — treaty of — United States — Norway — application of — estates — citizens.**

8. Article 6 of the Treaty of Amity and Commerce between the United States and the Kingdom of Norway is only applicable to the estates of decedents who were citizens of Norway leaving property in the United States and citizens of the United States leaving property in Norway and those inheriting from them, and is not applicable to the estates of decedents who were citizens of the United States.

**Property — right of removal — from state to state — devise — inherit — right to — tax — inheritance.**

9. The term *"droit de detraction"* means a tax which is levied on the right of removal of property from one state to another, and does not include an inheritance tax, which is merely a tax upon the right to devise and to inherit.

**Treaties — liberal construction — general rule — inheritance tax — statutes — application of.**

10. The general rule that treaties should be liberally construed so as to carry out the apparent intention of the parties to secure equality and reciprocity between them does not justify a state court in judicially legislating as against the right of the state and its taxing power, and in adding words to a treaty so as to make it applicable to the estate of citizens of the United States in the United States, when by its terms it is only applicable to the estates of aliens or to the estates of citizens of the United States who reside in a foreign country.

Opinion filed April 4, 1917.

Appeal from an order and judgment of the District Court of Cass County reversing an order of the County Court and fixing the amount of an inheritance tax, *Pollock,* J.

Intervener appeals.

Reversed.

*George E. Wallace* and *F. E. Packard,* for appellant.

Aliens take only as the law provides. It was the common-law rule that aliens could not acquire title by descent; 2 A. R. C. 123, 124, 129, note; 1 R. C. L. 870, and note 18.

The question of the propriety of a statute rests in legislative discretion, and an act may be declared unconstitutional only when it violates that instrument clearly, and in such a manner as to leave no reasonable doubt. Stewart v. Polk County, 30 Iowa, 9, 1 Am. Rep. 238.

This state has removed the common-law disability of aliens by stat-

ute. Comp. Laws 1913, § 5759; 1 R. C. L. 815, and note 10; Wunderle v. Wunderle, 144 Ill. 40, 19 L.R.A. 84, 33 N. E. 195; Beavan v. Went, 155 Ill. 592, 31 L.R.A. 85, 41 N. E. 91.

A state may extend the right of citizens as to property to foreigners who become bona fide residents. State ex rel. Ling v. Preble, 18 Nev. 251, 2 Pac. 754.

It may also extend to nonresident aliens the right of inheritance. Ettenheimer v. Heffernan, 66 Barb. 374; Kull v. Kull, 37 Hun, 476; Garretson v. Brien, 3 Heisk. 534; Murray v. Kelly, 27 Ind. 42.

A state may give such right to resident aliens, to the exclusion of nonresident aliens. Furenes v. Mickelson, 86 Iowa, 508, 53 N. W. 416; Easton v. Huott, 95 Iowa, 473, 31 L.R.A. 177, 64 N. W. 408; Ware v. Wisner, 4 McCrary, 66, 50 Fed. 310; Stemple v. Herminghouser, 3 G. Greene, 408; Krogan v. Kinney, 15 Iowa, 242; Rheim v. Robbins, 20 Iowa, 45; White v. Rettenmyer, 30 Iowa, 268; Brown v. Pearson, 41 Iowa, 481; King v. Ware, 53 Iowa, 97; Mitchell v. Vest, 157 Iowa, 336, 136 N. W. 1054; Ahrens v. Ahrens, 123 Iowa, 486, 123 N. W. 164, Ann. Cas. 1912A, 1098; Louisville v. Gray, 1 Litt. (Ky.) 147; Beard v. Rowan, 9 Pet. 301, 9 L. ed. 135, 1 McLean, 135; Yeaker v. Yeaker, 4 Met. (Ky.) 33, 81 Am. Dec. 530; Wacker v. Wacker, 26 Mo. 426; Harney v. Donohoe, 97 Mo. 141, 10 S. W. 191; 2 Bl. Com. 249; 2 Kent, Com. 54; N. H. Pub. Stat. 1901, chap. 137, §§ 16, 17, chap. 176, § 8; Re Colbert, 44 Mont. 259, 119 Pac. 791; Ettenheimer v. Heffernan, 66 Barb. 374; Goodrich v. Russell, 42 N. Y. 179; Luhrs v. Eimer; 80 N. Y. 171; Hall v. Hall, 81 N. Y. 130, 13 Hun, 306; McConville v. Howell, 5 McCrary, 319, 17 Fed. 104; Wunderle v. Wunderle, 144 Ill. 40, 19 L.R.A. 84, 33 N. E. 195.

The law generally recognizes the classification of aliens as resident and nonresident aliens. Also as alien friends or alien enemies. Luhrs v. Eimer, 80 N. Y. 171; Re Wehlitz, 16 Wis. 443, 84 Am. Dec. 700; 2 C. J. 1043, 1061, 1063, and note 68, 1070, and notes 35 and 36; Re Gill, 79 Iowa, 296, 9 L.R.A. 126, 44 N. W. 553; 1 Bl. Com. 372; Dorsey v. Brigham, 177 Ill. 250, 42 L.R.A. 809, 69 Am. St. Rep. 228, 52 N. E. 303; 2 Kent, Com. 63; Buchanan v. Deshon, 1 Harr. & G. 280; Maiorano v. Baltimore & O. R. Co. 216 Pa. 402, 21 L.R.A. (N.S.) 271, 65 Atl. 1077, 116 Am. St. Rep. 778; Mulhall v. Fallon, 176 Mass. 266, 54 L.R.A. 934, 79 Am. St. Rep. 309, 57 N. E. 386;

Connolly v. Reed, 22 Idaho, 29, 125 Pac. 213; Kennedy v. Wood, 20 Wend. 230; 2 Am. & Eng. Enc. Law, 76; 6 R. C. L. 428, and note 10; Mager v. Grima, 8 How. 490, 12 L. ed. 1168; Magoun v. Illinois Trust & Sav. Bank, 170 U. S. 283, 42 L. ed. 1037, 18 Sup. Ct. Rep. 594.

Such classifications are wholly within legislative discretion. Such statutes must be based upon some natural principle of public policy, and must be uniform in their operation on all members of the class or classes to which they are made applicable. 6 R. C. L. 380; Consumers' League v. Colorado & S. F. R. Co. 53 Colo. 54, 125 Pac. 577, Ann. Cas. 1914A, 1158.

Unless such laws are so manifestly unjust and inequitable as to cause an imposition of burdens on one class to the exclusion of another class without reasonable distinction, they will be upheld. State v. McFarland, 60 Wash. 98, 140 Am. St. Rep. 909, 110 Pac. 792; 6 R. C. L. 380, and cases therein cited, 385, 386, and notes therein cited, 388, and note 9; Re McKennan, 27 S. D. 136, 33 L.R.A.(N.S.) 620, 130 N. W. 33, Ann. Cas. 1913D, 750.

The population of the state may be classified into cities and villages for certain purposes of government. Budd v. New York, 143 U. S. 517, 36 L. ed. 247, 4 Inters. Com. Rep. 45, 12 Sup. Ct. Rep. 468; State v. Peel Splint Coal Co. 36 W. Va. 802, 17 L.R.A. 385, 15 S. E. 1000; Mutual Loan Co. v. Martell, 200 Mass. 482, 43 L.R.A.(N.S.) 746, 128 Am. St. Rep. 446, 86 N. E. 916; State v. Sherman, 18 Wyo. 169, 27 L.R.A.(N.S.) 898, 105 Pac. 299, Ann. Cas. 1912C, 819; Summerville v. Pressley, 33 S. C. 56, 8 L.R.A. 854, 26 Am. St. Rep. 659, 11 S. E. 545; Ex parte Lewinsky, 66 Fla. 324, 50 L.R.A.(N.S.) 1156, 63 So. 577; 1 R. C. L. 801; Trageser v. Gray, 73 Md. 250, 9 L.R.A. 780, 25 Am. St. Rep. 587, 20 Atl. 905; Allen v. Smith, 84 Ohio St. 283, 95 N. E. 829, Ann. Cas. 1912C, 611; Williams v. Donough, 65 Ohio St. 499, 56 L.R.A. 766, 63 N. E. 84; Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 33 L. ed. 892, 10 Sup. Ct. Rep. 533; State ex rel. Lewis v. Smith, 158 Ind. 543, 63 L.R.A. 116, 63 N. E. 25, 214, 64 N. E. 18; State v. Shedroi, 75 Vt. 277, 63 L.R.A. 179, 98 Am. St. Rep. 825, 54 Atl. 1081, 15 Am. Crim. Rep. 129; Slaughter-House Cases, 16 Wall. 36, 21 L. ed. 394; Grainger v. Douglas Park Jockey Club, 78 C. C. A. 199, 148 Fed. 513, 8 Ann. Cas. 997; Qoung Wing v. Kirkendall, 223 U. S. 59, 56 L. ed. 350, 32 Sup. Ct.

Rep. 192; Wenham v. State, 65 Neb. 394, 58 L.R.A. 825, 91 N. W. 421.

Withholding from women permits to sell intoxicating liquors, while granting them to others, does not deprive women of any constitutional right. Re Carragher, 149 Iowa, 225, 31 L.R.A.(N.S.) 321, 128 N. W. 352, Ann. Cas. 1912C, 972.

Also forbidding them to enter wine rooms for the purpose of being supplied with liquor. Cronin v. Adams, 192 U. S. 108, 48 L. ed. 365, 24 Sup. Ct. Rep. 219, 29 Colo. 488, 63 L.R.A. 61, 69 Pac. 590.

Also prohibiting the keepers of such resorts from permitting women to frequent their places of business. Cronin v. Adams, supra; People v. Case, 18 L.R.A.(N.S.) 657, and note, 153 Mich. 98, 116 N. W. 558.

Minors, by the laws of every state, are placed in a certain class. Re Spencer, 149 Cal. 396, 117 Am. St. Rep. 137, 86 Pac. 896, 9 Ann. Cas. 1105; Re Morgan, 26 Colo. 415, 47 L.R.A. 52, 77 Am. St. Rep. 269, 58 Pac. 1071.

Also fixing the age of children when it shall be lawful for them to enter, or be permitted to enter, saloons. State v. Baker, 50 Or. 381, 13 L.R.A.(N.S.) 1040, 92 Pac. 1076.

Laws which prefer veterans of the Civil War for appointment to office over all other qualified persons are upheld. Goodrich v. Mitchell, 68 Kan. 765, 64 L.R.A. 945, 104 Am. St. Rep. 429, 75 Pac. 1034, 1 Ann. Cas. 288; Shaw v. Marshalltown, 10 L.R.A.(N.S.) 825, and note, 9 Ann. Cas. 1039, and note, 131 Iowa, 128, 104 N. W. 1121.

A law fixing the age of limitation for certain purposes, like jury service, militia, etc., is valid. Thurston County v. Tenino Stone Quarries, 44 Wash. 351, 9 L.R.A.(N.S.) 306, 87 Pac. 634, 12 Ann. Cas. 314.

Classification of occupation may also be made on the basis of the number of persons employed. Consolidated Coal Co. v. Illinois, 185 U. S. 203, 46 L. ed. 872, 22 Sup. Ct. Rep. 616; McLean v. Arkansas, 211 U. S. 539, 53 L. ed. 315, 29 Sup. Ct. Rep. 206; Consumers League v. Colorado & S. R. Co. 53 Colo. 54, 125 Pac. 577, Ann. Cas. 1914A, 1158.

Classification as to retailers and wholesalers of intoxicating liquors is also proper. Cook v. Marshall County, 196 U. S. 261, 49 L. ed.

471, 25 Sup. Ct. Rep. 233; Southwest Oil Co. v. Texas, 217 U. S. 114, 54 L. ed. 688, 30 Sup. Ct. Rep. 496.

Also, as between banks and bankers, there may be proper forms of classification. Assaria State Bank v. Dolley, 219 U. S. 121, 55 L. ed. 123, 31 Sup. Ct. Rep. 189; Engel v. O'Malley, 219 U. S. 128, 55 L. ed. 128, 31 Sup. Ct. Rep. 190; Provident Inst. for Sav. v. Malone, 221 U. S. 660, 55 L. ed. 899, 34 L.R.A.(N.S.) 1129, 31 Sup. Ct. Rep. 661.

In many instances legislation applicable to railway companies only, although vigorously assailed as a denial of the equal protection of the laws, has been upheld as an exercise of a valid police power of the United States. Missouri P. R. Co. v. Humes, 115 U. S. 512, 29 L. ed. 463, 6 Sup. Ct. Rep. 110; Missouri P. R. Co. v. Mackey, 127 U. S. 205, 32 L. ed. 107, 8 Sup. Ct. Rep. 1161; Minneapolis & St. L. R. Co. v. Herrick, 127 U. S. 210, 32 L. ed. 109, 8 Sup. Ct. Rep. 1176; Pittsburgh, C. C. & St. L. R. Co. v. Backus, 154 U. S. 421, 38 L. ed. 1031, 14 Sup. Ct. Rep. 1114; Norfolk & W. R. Co. v. Pennsylvania, 136 U. S. 114, 34 L. ed. 394, 3 Inters. Com. Rep. 178, 10 Sup. Ct. Rep. 958; Hughes v. Cairo, 92 Ill. 339; Home Ins. Co. v. Swigert, 104 Ill. 653; Union Cent. L. Ins. Co. v. Durfee, 164 Ill. 186, 45 N. E. 441.

So in the classification of municipal corporations for certain purposes peculiarly adapted to certain cities. Darcy v. San Jose, 104 Cal. 642, 38 Pac. 500.

Authority rests in the various states to classify between residents and nonresidents. State v. Broadbelt, 89 Md. 565, 45 L.R.A. 433, 73 Am. St. Rep. 201, 43 Atl. 771; Central Loan & T. Co. v. Campbell Commission Co. 173 U. S. 84, 43 L. ed. 623, 19 Sup. Ct. Rep. 346; Chemung Canal Bank v. Lowery, 93 U. S. 72, 23 L. ed. 806; Re Wickstrum, 92 Neb. 523, 42 L.R.A.(N.S.) 1068, 138 N. W. 733; Des Moines v. Keller, 116 Iowa, 648, 57 L.R.A. 243, 93 Am. St. Rep. 268, 88 N. W. 827.

So as to vehicles and cars propelled by electricity and their use. Detroit, Ft. W. & B. I. R. Co. v. Osborn, 189 U. S. 383, 47 L. ed. 860, 23 Sup. Ct. Rep. 540; Cicero Lumber Co. v. Cicero, 176 Ill. 9, 42 L.R.A. 696, 68 Am. St. Rep. 155, 51 N. E. 758.

Also on the question of the inheritance tax as it applies to relatives of different degrees. Strauss v. Costello, 29 N. D. 222, 150 N. W. 874.

Where there are classes created by the statute, and its application to the inheritance tax which each shall pay is equitable and reasonable as to each person in each class, and where equality is preserved, such legislation is valid. ·Magoun v. Illinois Trust & Sav. Bank, 170 U. S. 283, 42 L. ed. 1037, 18 Sup. Ct. Rep. 594; Billings v. Illinois, 188 U. S. 97, 47 L. ed. 400, 23 Sup. Ct. Rep. 272; Campbell v. California, 200 U. S. 87, 50 L. ed. 382, 26 Sup. Ct. Rep. 182; Cahen v. Brewster, 203 U. S. 543, 51 L. ed. 310, 27 Sup. Ct. Rep. 174, 8 Ann. Cas. 215; Re Speed, 216 Ill. 23, 108 Am. St. Rep. 189, 74 N. E. 809; Board of Education v. Illinois, 203 U. S. 553, 51 L. ed. 314, 27 Sup. Ct. Rep. 171, 8 Ann. Cas. 157; Beers v. Glynn, 211 U. S. 477, 53 L. ed. 290, 29 Sup. Ct. Rep. 186; Re Lord, 186 N. Y. 549, 79 N. E. 1110; Humphreys v. State, 70 Ohio St. 67, 65 L.R.A. 776, 101 Am. St. Rep. 888, 70 N. E. 957, 1 Ann. Cas. 233.

Classifications may be founded upon some natural or intrinsic or constitutional distinction; they may also distinguish between the direct line and collateral relations as a natural distinction. Re Campbell, 143 Cal. 623, 77 Pac. 674; Re Wilmerding, 117 Cal. 281, 49 Pac. 181; Com. v. Randall, 225 Pa. 197, 73 Atl. 1109.

The motive of the legislature in passing a law cannot be inquired into by the courts. English v. Crenshaw, 127 Am. St. Rep. 1048, note f; People ex rel. Crowell v. Lawrence, 36 Barb. 177; Veazie Bank v. Fenno, 8 Wall. 553, 19 L. ed. 489.

It is within the province of the state to give to aliens only such rights and privileges as the state may desire or think proper. The state may also distinguish between resident and nonresident aliens. Also, between aliens and citizens. 3 Enc. L. & P. p. 7, and note 10; Carlisle v. United States, 16 Wall. 147, 21 L. ed. 426.

Section twenty (20) of the Constitution has no reference or application to aliens. Re Johnson, 139 Cal. 532, 96 Am. St. Rep. 161, 73 Pac. 424; Lehman v. McBride, 15 Ohio St. 605; State ex rel. Schwartz v. Ferris, 53 Ohio St. 314, 30 L.R.A. 218, 41 N. E. 579.

All such laws of a general nature shall be uniform in their operation. People ex rel. Smith v. Twelfth Dist. Judge, 17 Cal. 554; Brooks v. Hyde, 37 Cal. 375; French v. Teschemaker, 24 Cal. 544; McGill v.

State, 34 Ohio St. 228; People v. Coleman, 4 Cal. 46, 60 Am. Dec. 581; French v. Davidson, 143 Cal. 658, 77 Pac. 663; State ex rel. Flaherty v. Hanson, 16 N. D. 347, 113 N. W. 371.

But inheritance taxes are excise taxes, and no uniformity is required. Magoun v. Illinois Trust & Sav. Bank, 170 U. S. 283, 42 L. ed. 1037, 18 Sup. Ct. Rep. 594; Orient Ins. Co. v. Daggs, 172 U. S. 557, 562, 43 L. ed. 552, 554, 19 Sup. Ct. Rep. 281; Campbell v. California, 200 U. S. 87, 50 L. ed. 382, 26 Sup. Ct. Rep. 182; Booth v. Com. (Rodman v. Com.) 130 Ky. 88, 33 L.R.A.(N.S.) 592, 113 S. W. 61; Minot v. Winthrop, 162 Mass. 122, 26 L.R.A. 259, 38 N. E. 512; Kingsbury v. Chapin, 196 Mass. 537, 82 N. E. 700, 13 Ann. Cas. 738; Re Touhy, 35 Mont. 431, 90 Pac. 172; Scholey v. Rew, 23 Wall. 331, 23 L. ed. 99; Knowlton v. Moore, 178 U. S. 41, 81, 44 L. ed. 969, 985, 20 Sup. Ct. Rep. 747; Ross, Inheritance Taxn. § 4, note 4.

The law here in question is not special or class legislation, as those terms are understood and applied. State ex rel. Miller v. Flaherty, 23 N. D. 313, 41 L.R.A.(N.S.) 132, 136 N. W. 76; State v. Armour & Co. 27 N. D. 177, L.R.A.1916E, 380, 145 N. W. 1033, Ann. Cas. 1916B, 1149; State v. Olson, 26 N. D. 304, L.R.A. —, —, 144 N. W. 661; State v. Alabama Fuel & Iron Co. 188 Ala. 487, L.R.A.1915A, 185, 66 So. 169, Ann. Cas. 1916E, 752; State v. Lathrop, 10 La. Ann. 398; State v. Ogden, 10 La. Ann. 402; New Orleans v. Kaufman, 29 La. Ann. 283, 29 Am. Rep. 328; State Assessors v. Central R. Co. 48 N. J. L. 146, 4 Atl. 578; Fox v. Edelman, 1 Lehigh Valley L. Rep. 169; Pacific Exp. Co. v. Seibert, 142 U. S. 339, 35 L. ed. 1035, 3 Inters. Com. Rep. 810, 12 Sup. Ct. Rep. 250; Minneapolis & N. Elevator Co. v. Traill County, 9 N. D. 213, 50 L.R.A. 266, 82 N. W. 727; Rast v. Van Deman & L. Co. 240 U. S. 342, 60 L. ed. 679, L.R.A.1917A, 421, 36 Sup. Ct. Rep. 370; Armour & Co. v. North Dakota, 240 U. S. 510, 60 L. ed. 771, 36 Sup. Ct. Rep. 440, Ann. Cas. 1916D, 548; Michigan R. Tax Cases, 138 Fed. 223; Michigan C. R. Co. v. Powers, 201 U. S. 245, 50 L. ed. 744, 26 Sup. Ct. Rep. 459; Wells, F. & Co's Exp. v. Crawford County, 63 Ark. 576, 37 L.R.A. 371, 40 S. W. 710; Mutual Ben. L. Ins. Co. v. Martin County, 104 Minn. 179, 116 N. W. 572, Id. 104 Minn. 526, 116 N. W. 575; People ex rel. Farrington v. Mensching, 187 N. Y. 8, 10 L.R.A.(N.S.) 625, 79 N. E. 884,

10 Ann. Cas. 101; Missouri, K. & T. R. Co. v. Shannon, 100 Tex. 379, 10 L.R.A.(N.S.) 681, 100 S. W. 138.

The law does not violate the treaty with Norway. The same rule applies to the construction of treaties as is applied to contracts between individuals. Re Anderson, 166 Iowa, 617, 52 L.R.A.(N.S.) 686, 147 N. W. 1098; Geofroy v. Riggs, 133 U. S. 258, 271, 33 L. ed. 642, 646, 10 Sup. Ct. Rep. 295, 298; Scholey v. Rew, 23 Wall. 331, 23 L. ed. 99; Strode v. Com. 52 Pa. 181; Orcutt's Appeal, 97 Pa. 179; Bittinger's Estate, 129 Pa. 338, 18 Atl. 132; State v. Hamlin, 86 Me. 495, 25 L.R.A. 632, 41 Am. St. Rep. 569, 30 Atl. 76; Re Peterson, 168 Iowa, 511, L.R.A.1916A, 469, 151 N. W. 70.

In construing a treaty the court is to be guided by the intent of the parties. Com. v. Patsone, 231 Pa. 46, 79 Atl. 928; Re McKennan, 25 S. D. 369, 33 L.R.A.(N.S.) 606, 126 N. W. 611, 27 S. D. 136, 33 L.R.A.(N.S.) 620, 130 N. W. 33, Ann. Cas. 1913C, 1029; Knowlton v. Moore, 178 U. S. 41, 44 L. ed. 969, 20 Sup. Ct. Rep. 747; State Street Trust Co. v. Treasurer & Receiver General, 209 Mass. 373, 95 N. E. 851; Atty. Gen. v. Stone, 209 Mass. 186, 95 N. E. 395; Re Peterson, 168 Iowa, 511, L.R.A.1916A, 469, 151 N. W. 66; Re Anderson, 166 Iowa, 617, 52 L.R.A.(N.S.) 686, 147 N. W. 1098; Lacy v. State Treasurer, — Iowa, —, 121 N. W. 179; Herriott v. Bacon, 110 Iowa, 342, 81 N. W. 701; United States v. Perkins, 163 U. S. 625, 41 L. ed. 287, 16 Sup. Ct. Rep. 1073; Scholey v. Rew, 23 Wall. 331, 23 L. ed. 99; Ferry v. Campbell, 110 Iowa, 290, 50 L.R.A. 92, 81 N. W. 604; Re Stone, 132 Iowa, 136, 109 N. W. 455, 10 Ann. Cas. 1033; Mager v. Grima, 8 How. 490, 12 L. ed. 1168, 12 Rob. (La.) 584; Ross, Inheritance Taxn. art. 23, note 23; Frederickson v. Louisiana, 23 How. 447, 16 L. ed. 579.

*Fowler & Green,* for respondents.

"All laws of a general nature shall have a uniform operation." N. D. Const. art. 11.

Such article of the Constitution prohibits what is popularly styled "class legislation." It does not prohibit all classification.

But such classification must rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed. Gulf, C. & S. F. R. Co. v. Ellis, 165 U. S. 155,

.41 L. ed. 668, 17 Sup. Ct. Rep. 255; Beleal v. Northern P. R. Co. 15 N. D. 325, 108 N. W. 33, 20 Am. Neg. Rep. 453.

There are limitations of the right to enact Classification Laws. Edmonds v. Herbrandson, 2 N. D. 273, 14 L.R.A. 725, 50 N. W. 970.

This classification legislation cannot be arbitrary. The legislature ·cannot finally settle the boundaries to be drawn. Such a view of the organic law would bring upon the court the just reproach that it had suffered the legislature to disregard the constitutional barrier by rele- .gating to itself the question of where that barrier should be set up. State ex rel. Pell v. Newark, 40 N. J. L. 80; Ayars' Appeal, 122 Pa. .266, 2 L.R.A. 577, 16 Atl. 356; State ex rel. Richards v. Hammar, 42 N. J. L. 435; Chicago, M. & St. P. R. Co. v. Westby, 47 L.R.A.(N.S.) .97, 102 C. C. A. 65, 178 Fed. 619.

The test in this class of cases is that none shall be excluded from the ·class occupied by others, who bear the same relationship to the subject-matter of the act. The heirs in this case are all similarly situated, with ·the exception that some reside in the United States and others reside in Norway,—a mere geographical difference. The subject-matter of the .act in question is the taxation of estates passing to the heirs of a de- ·cedent. All the heirs here bear the same relationship to the decedent. It is true that lineal heirs may be put in one class and collateral heirs in another class, because they bear a different relationship. This was the basis of the decisions upon which appellant relies. Magoun v. Illinois Trust & Sav. Bank, 170 U. S. 283, 42 L. ed. 1037, 18 Sup. Ct. Rep. .594; Billings v. Illinois, 188 U. S. 97, 47 L. ed. 400, 23 Sup. Ct. Rep. 272; Campbell v. California, 200 U. S. 87, 50 L. ed. 382, 26 ·Sup. Ct. Rep. 182.

"In order to justify classification, there must, of course, be substantial and real differences of situation, calling for, or reasonably sug- .gesting, the necessity for different treatment." Lineal and collateral .relatives stand in different positions to the decedent. Nuinnemacher v. State, 129 Wis. 190, 9 L.R.A.(N.S.) 121, 108 N. W. 627, 9 Ann. Cas. 711.

"It is necessary to make such excise as to the entire class of collaterals. It must not tax one and except another in the same class." State v. Hamlin, 86 Me. 495, 25 L.R.A. 632, 41 Am. St. Rep. 569, .30 Atl. 76; Plummer v. Borsheim, 8 N. D. 565, 80 N. W. 690;

Angell v. Cass County, 11 N. D. 265, 91 N. W. 72; Edmonds v. Herbrandson, supra; State ex rel. Dorval v. Hamilton, 20 N. D. 592, 129 N. W. 916; Beleal v. Northern P. R. Co. 15 N. D. 318, 108 N. W. 33, 20 Am. Neg. Rep. 453; Truax v. Raich, 239 U. S. 33, 60 L. ed. 131, L.R.A.1916D, 545, 36 Sup. Ct. Rep. 7.

It is elementary that if a state law comes in conflict with a treaty existing, the law must give way. Fed. Const. cl. 2, art. 6; Hauenstein v. Lynham, 100 U. S. 483, 25 L. ed. 628; Geofroy v. Riggs, 133 U. S. 258, 33 L. ed. 642, 10 Sup. Ct. Rep. 295; Re Stixrud, 58 Wash. 339, 44 L.R.A.(N.S.) 632, 109 Pac. 343, Ann. Cas. 1912A, 850.

"Treaties should be liberally construed so as to carry out the apparent intention of the parties to secure equality and reciprocity between them." Geofroy v. Riggs, 133 U. S. 258, 33 L. ed. 642, 10 Sup. Ct. Rep. 295.

"Where a treaty admits of two constructions, one restrictive as to the rights that may be claimed under it, and the other liberal, the latter is to be preferred." Hauenstein v. Lynham, 100 U. S. 483, 25 L. ed. 628; Adams v. Akerund, 168 Ill. 632, 48 N. E. 454; Re Stixrud, 58 Wash. 339, 44 L.R.A.(N.S.) 632, 109 Pac. 343, Ann. Cas. 1912A, 850; Erickson v. Carlson, 95 Neb. 182, 145 N. W. 353; Den ex dem. University v. Miller, 14 N. C. (3 Dev. L.) 188; Re Peterson, 168 Iowa, 511, L.R.A.1916A, 469, 151 N. W. 66; 1 Bouvier's Law Dict. Rawle's Rev. 941; Geofroy v. Riggs, supra; 21 Cyc. 420; Re White, 42 Wash. 360, 84 Pac. 831.

The supreme court of Iowa and counsel for appellant assume that taxes known as inheritance taxes were unknown at the time of the making of the original treaty with Norway in 1783, and hence could not have been in contemplation by the framers of the treaty. This is not true. Such taxes have been in existence in England and Europe since 1694. Knowlton v. Moore, 178 U. S. 41, 44 L. ed. 969, 20 Sup. Ct. Rep. 747; Adams v. Akerlund, 168 Ill. 632, 48 N. E. 454.

BRUCE, Ch. J. This is an appeal from an order and judgment of the district court of Cass county reversing an order of the county court fixing the amount of the inheritance tax to be paid on the legacy of the respondent Elina A. Skarderud.

Elina A. Skarderud is a subject and resident of Norway. She has

a sister and brother, one residing in Fargo, and the other in California, both of whom are citizens of the United States. These three are collateral heirs, and by will are given the entire property, real and personal, of Martin A. Hagen, deceased, who in his lifetime was a citizen of the United States, domiciled in Fargo, Cass county, North Dakota. This appeal involves the constitutionality of the Inheritance Tax Law as applied to the respondent Elina A. Skarderud. As to the other heirs, it is conceded the tax is lawful, and is payable on a basis of 1½ per cent up to $25,000 and 2½ per cent on the excess. The tax computed against the share of Elina A. Skarderud was at the rate of 25 per cent, which is the amount required by the statute to be taxed in the case of aliens who are *not residents* of the United States.

. The part of the act (Comp. Laws 1913, § 8977) which is in dispute reads as follows: "Upon the transfer of property in any manner hereinbefore described to or for the use of collateral relations or strangers in blood who are *aliens not residing in the United States* or to or for the use of any corporation which is not chartered by the authority of the government of the United States or of any state, a tax of 25 per centum shall be levied and collected."

It is contended that this clause violates § 11 of art. 1 of the Constitution of the state of North Dakota, which provides that "laws of a general nature shall have a uniform operation." Also § 20 of art. 1, which provides that "no special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens." It is also contended that the act violates the provision of art. 6 of the Treaty of Amity and Commerce which was entered into between the United States and Norway and Sweden in 1783, and revised by art. 17 of the Treaty of Commerce and Navigation of 1827, and later still, and after the separation of Norway and Sweden, reaffirmed between the several nations.

It is clear to us that § 20 of art. 1 of the Constitution of North Dakota has no connection with the case at bar. The respondent Elina A. Skarderud is concededly not a citizen of North Dakota, nor of the United States. The constitutional provision, therefore, has no applicability to her. Magoun v. Illinois Trust & Sav. Bank, 170 U. S. 283,

42 L. ed. 1037, 18 Sup. Ct. Rep. 594; Mager v. Grima, 8 How. 490, 12 L. ed. 1168. Even if the tax be looked upon as a limitation on the right of the decedent to devise and bequeath, the limitation applies to all citizens and all residents of North Dakota, and therefore does not discriminate as to any privilege or any immunity.

Nor do we believe that the statute in any way violates § 11 of art. 1, which provides that "laws of a general nature shall have a uniform operation."

It is certainly uniform as to all decedents in North Dakota. It is certainly uniform as to all nonresident aliens. Magoun v. Illinois Trust & Sav. Bank, supra.

The only criticism then that can be made against it is that it discriminates against these nonresident aliens as compared with citizens of the United States and with resident aliens.

It is, of course, well established that a reasonable classification does not subject a law to the taint of lack of uniformity, and that in passing upon the question the test is "a just and natural reason of necessity or propriety for the difference made by the law in the liabilities and rights" of the members of the several classes. Chicago, M. & St. P. R. Co. v. Westby, 47 L.R.A.(N.S.) 97, 102 C. C. A. 65, 178 Fed. 619; Re McKennan, 27 S. D. 136, 33 L.R.A.(N.S.) 620, 130 N. W. 33, Ann. Cas. 1913D, 745; State ex rel. Foot v. Bazille, 97 Minn. 11, 6 L.R.A.(N.S.) 732, 106 N. W. 93, 7 Ann. Cas. 1056; Frederickson v. Louisiana, 23 How. 445, 16 L. ed. 577.

We believe that there is "a just and natural reason of necessity or propriety for the classification which is made."

We must start with the premise that the right to inherit or to take by will and the right to devise and bequeath are not natural and inalienable rights, nor are they guaranteed by the state or Federal Constitutions, but are entirely within the control of the sovereign state. United States v. Perkins, 163 U. S. 625, 41 L. ed. 287, 16 Sup. Ct. Rep. 1073; Magoun v. Illinois Trust & Sav. Bank, supra.

We must further recognize the historical and legal fact that even when the right to devise and to bequeath, and to take by will, and to inherit has been recognized by statute, as it has been, generally, throughout the United States, the alien has never, in the absence of permissive legislation, been allowed, as against the sovereign state, to take by·

descent or even by will. 2 C. J. 1054, 1057; Connolly v. Reed, 22 Idaho, 29, 125 Pac. 213. We must also adopt the premise that statutes which change the common law and which allow aliens to take by will or to inherit are not to be looked upon in the light of a recognition or extension of any previously existing right belonging to such aliens, but rather as a fresh grant or a right or a statute of grace which the state chooses to confer. 2 C. J. 1062; Connolly v. Reed, supra.

We may also add that we seriously question the proposition that a nonresident alien can invoke the provisions of the state and Federal Constitutions at all. He owes no allegiance to our flag or our government. He may, as far as we know, be plotting our destruction. Why should we be presumed to give when we receive nothing. The Constitution, no doubt, follows the flag. But the American flag does not wave over the continent of Europe. See Wunderle v. Wunderle, 144 Ill. 40, 19 L.R.A. 84, 33 N. E. 195. We merely suggest the point, however, and make no holding upon it.

Be this as it may, however, we believe that there is a valid reason for the discrimination, and even though resident and nonresident aliens are not treated alike.

It must indeed be apparent to all that a sovereign state must have the right to impose a higher inheritance tax on nonresident aliens than upon its own residents and citizens. Residents and citizens together tend to make up the united strength of the state and of the nation, for it is of men and women that states are made. Mager v. Grima, 8 How. 493, 12 L. ed. 1170.

It is also clear that although a state, without the consent of Congress, may only levy such taxes on exports as are necessary for executing its Inspection Laws (Fed. Const. § 10, art. 1), the right of the several states to control the disposition of their own property and the laws of descent and inheritance have not been taken away from them. Magoun v. Illinois Trust & Sav. Bank and Wunderle v. Wunderle, supra.

It is now generally conceded that the right to inherit or take by will is not a natural and inalienable right, nor is the right to bequeath and devise, and if this be true of the citizens of a state, much more must it be true of nonresident aliens.

There is nothing in the state or in the Federal Constitutions which prevents a state, if it will, from returning to the medieval theory and

practice and of providing that upon the death of the owner all of his property shall escheat to it. If, as has been held by the Supreme Court of the United States in the case of McCready v. Virginia, 94 U. S. 391, 24 L. ed. 248, a state may reserve the use of its oyster beds to its own citizens, and if a state can take away the right or power to dispose by will or to inherit, it may place upon the right, if granted, whatever limitations it may please. 6 R. C. L. 428; Mager v. Grima, 8 How. 490, 12 L. ed. 1168; Magoun v. Illinois Trust & Sav. Bank, 170 U. S. 283, 42 L. ed. 1037, 18 Sup. Ct. Rep. 594; Connolly v. Reed, 22 Idaho, 29, 125 Pac. 213.

There is a wide difference between a tax on the right to export or to carry out of the state after the property has passed to the heir or legatee and has become his, and a tax on the property before it passes to such person, or on the right of the decedent to will and bequeath and the right of the legatee to accept. Re Anderson, 166 Iowa, 617, 52 L.R.A.(N.S.) 686, 147 N. W. 1098.

In such a case the state is really dealing with its own property or with that which, if it chose, could be its own property. It is simply saying, this property is of right and ancient usage ours, but we will give citizens of the United States, whether residing here or abroad, and alien citizens, provided they reside in the United States, 98½ per cent of that which the decedent desired that they should have, but to aliens who do not reside in the United States we will only give 75 per cent, and the remainder we will keep for ourselves. Mager v. Grima and Connolly v. Reed, supra.

If reason were necessary to be given for this discrimination between resident and nonresident aliens, it would be easy to be found, and even though the aliens do not reside within the state of North Dakota, but within some other state of the American Union. A resident of another state of the Union, even though an alien, learns of our institutions, and becomes imbued with our spirit. Especially if he has children who attend our public schools, he cannot help but become attached to us. If children are born to him within our borders, they, by that very fact, become citizens. In case of war he is usually an alien friend rather than an alien enemy.

We are a nation, indeed, though composed of many states. Our state officers first swear to support the Constitution of the United States and

then the Constitution of their own state. Every person born or naturalized in the United States and subject to the jurisdiction thereof is a citizen first of the United States and then of the state in which he resides. See 14th Amendment to the Federal Constitution. No state liveth unto itself or by itself.

Surely it is for the interest of the state of North Dakota that the property of the United States shall as far as possible be kept within the confines of the country, even though not within our own borders. It is created under the protection of the same flag and the same national Constitution.

All private property within the United States is subject to Federal taxation, and the wealth and prosperity of the United States as a whole are of vital importance to the citizens and residents of every state. The expenses of the national government must be met, and are everyday becoming greater and greater. Not only this, but the Federal taxing power is everyday incroaching upon the resources of the several states. The more, for instance, that is taken from the citizens of North Dakota by the Federal income tax, the less money and property have our citizens and residents to meet our own local and state exactions and to pay our state income tax, and our state taxes generally. We are vitally interested in the wealth of other states because they pay a proportionate share of the general Federal taxes which we all must pay. The nation is "the United States." The growth of every other state in opportunity and prosperity, and in all that opportunity and prosperity, when rightfully used, bring, is of moment to us. Their strength, both moral and material, helps to make up the sum of national greatness. Their people are our people; their flag is our flag; and their God is our God.

Nor do we believe that the act is in violation of article 6 of the Treaty of Amity and Commerce of 1783, between the United States and Norway and Sweden, as revised by article 17 of the treaty of Commerce and Navigation of 1827, and which treaty reads as follows: "The subjects of the contracting parties in the respective states, may freely dispose of their goods and effects either by testament, donation or otherwise, in favor of such persons as they think proper; and their heirs in whatever place they shall reside, shall receive the succession *ab intestato,* either in person or by their attorney, without having occa-

sion to take out letters of naturalization. These inheritances, as well as the capitals and effects, which the subjects of the two parties, in changing their dwelling, shall be desirous of removing from the place of their abode, shall be exempted from all duty, called *'droit de detraction'* on the part of the government of the two states respectively. But it is at the same time agreed, that nothing contained in this article shall in any manner derogate from the ordinances published in Sweden against emigrations, or which may hereafter be published, which shall remain in full force and vigor. The United States on their part, or any of them, shall be at liberty to make, respecting this matter, such laws as they think proper." [8 Stat. at L. 64.]

We fail, indeed, to see how this treaty is in any way applicable. As we have before pointed out, the deceased was not a citizen of Norway, but of North Dakota, and of the United States. The treaty clearly relates only to the rights and privileges of the subjects of the United States in Norway and the subjects of Norway in the United States, and those who take or inherit from them. So, too, it is perfectly clear that the subject of taxation was not attempted to be covered by the treaty, and much less the inheritance tax. The term *"droit de detraction"* has always had a well-defined meaning. It is a tax levied upon the removal from the one state or country to another of property acquired by succession or testamentary disposition, and it does not cover taxes upon the succession to or transfer of property. Re Peterson, 168 Iowa, 511, L.R.A.1916A, 469, 151 N. W. 66; Frederickson v. Louisiana, 23 How. 447, 16 L. ed. 579; Re Stroebel, 5 App. Div. 621, 39 N. Y. Supp. 169.

The treaty in question was first concluded in the year 1783 (8 Stat. at L. 60), and afterwards revised in the year 1816 (8 Stat. at L. 232) and again in 1827 (8 Stat. at L. 346). In the year 1783 there was no such thing as an inheritance tax either in the United States as a whole or in any of the several states. The first Federal tax was enacted in 1864. The first state tax, that of Pennsylvania, was not enacted until 1826. The next in point of time was that of Virginia, which was enacted in 1824, then that of Maryland, which was enacted in 1864, and then that of Delaware, which was enacted in 1869. The same rule applies in construing treaties as is applied in construing contracts, and that is that things not in existence will hardly be deemed to have been contemplated. Re Anderson, 166 Iowa, 617, 52 L.R.A.(N.S.) 686,

147 N. W. 1098; Geofroy v. Riggs, 133 U. S. 258, 33 L. ed. 642, 10 Sup. Ct. Rep. 298; Re Peterson, supra.

It is clear, therefore, from reading the treaty that all that was contemplated thereby was that the citizens of Norway, residing in North Dakota or in any of the United States, should be allowed to freely dispose by will, gift, or otherwise of their property, and that their heirs might receive such property without taking out letters of naturalization. The treaty does not apply to citizens of the United States as far as the right of disposition is concerned, nor to the beneficiaries by will or otherwise of the estates of citizens of the United States. Frederickson v. Louisiana, 23 How. 445, 16 L. ed. 577. The *"droit de detraction"* also, which is spoken of, merely relates to taxes upon the right of withdrawal from the country after the property has passed to the beneficiary. It has no relation whatever to a tax which is levied on the right of disposition or upon the right to receive property by will or descent, and which attaches and is levied before the property passes into the possession of the beneficiary. Re Peterson, supra.

We realize that the case of Re Stixrud, 58 Wash. 339, 33 L.R.A. (N.S.) 632, 109 Pac. 343, Ann. Cas. 1912A, 850, holds to a doctrine contrary to that here announced and that announced in the case of Re Peterson, supra. The plain language of the treaty compels us, however, to dissent from this opinion, and to follow the holding of the supreme court of Iowa in the case of Re Peterson, supra, which appears to us to be much more sound and reasonable.

The case of Geofroy v. Riggs, supra, cited by counsel for respondents, was a controversy purely between two citizens of France, and involved the inheritance of land in the District of Columbia. The District of Columbia does not seem to have asserted any right; no question of taxation was involved, and at any rate, if any sovereignty was involved, it was the sovereignty of the nation. The treaty, too, provided that "the citizens and *inhabitants* of the United States shall be at liberty to dispose, etc.," and was not like the treaty with Norway, confined merely to the rights of the citizens of the respective nations.

The case of Hauenstein v. Lynham, 100 U. S. 483, 25 L. ed. 628, involved the estate of a citizen of Switzerland who a resident of Virginia, and the claimant was also a citizen of Switzerland. The provisions of the treaty, therefore, were clearly applicable to the parties,

and though a liberal doctrine of construction was applied as to the express terms of the instrument, there was no attempt to add to the treaty other terms which were not included in it.

The opinion in the case of Re Stixrud, indeed, is much influenced by a recognition of the supposed rule of liberal construction which is presumed to apply to the case of treaties with foreign powers.

Though this rule may apply as between the United States and the citizens of the foreign nations, and as between the citizens of the United States and the foreign nations, we know of no such rule having been applied when the treaty violates to a greater or lesser extent the rights and prerogatives of the sovereign states, and much less to justify a construction which is not a construction, but an act of judicial legislation. It has, with the sole exception of the case of Re Stixrud (and then only in a state court, and not in the Supreme Court of the United States), never been applied in a case where a sovereign state was represented and sought to assert the prerogatives of its taxing power. We are firmly convinced that the so-called liberality of construction and what appears to us to be judicial legislation should never be tolerated as against such rights.

The whole structure of the American government is builded upon a foundation of state home rule, and though there may be in some cases where the state was really not vitally interested and its taxing power not involved, a more or less tacit acquiescence in the doctrine, we do not believe that any student of history will for a moment contend that the treaty-making power was ever intended to have been conferred upon the national government to such an extent as to interfere with the legitimate functions of the sovereign states.

It is to be remembered, indeed, that the treaty-making power is an extraordinary and undemocratic power. Unlike any other law, all that is necessary to the enactment of a treaty is the consent of the President and two thirds of the Senate. If, under this power, the right to the inheritance of land and property can be controlled at all (and it would seem from the case of Hauenstein v. Lynham, supra, that it may), the President and two thirds of the Senate can accomplish that which the people represented in both branches of the national Congress could not perform. Surely such an extraordinary power should not be added to by judicial legislation on the part of the courts

of the several states. A treaty should, perhaps, "be construed so as to carry out the apparent intention of the parties to secure equality and reciprocity between them." See Geofroy v. Riggs, supra. But "there are restraints which arise from the nature of the government itself and that of the states," and no new treaty should be made by the courts of the several states, and no new provisions should be judicially written into the national contracts.

Not only is this the case, but we believe the omission of the property of citizens of the United States when residing in the United States from the scope of the treaty was purposely made.

Home rule is certainly a cardinal principle of the American political system. It cannot be believed that the American Constitution would ever have been ratified by the several states if these states had ever believed that their taxing power could be taken away by the act of the President and two thirds of the Senate, and that the transmission of the property of their own citizens could be thus interfered with. The treaty-making power may apply to the rights of citizens of foreign nations in the United States and citizens of the United States in foreign states, but it surely does not apply, and the terms of the treaty in question do not make it apply, to the rights of citizens of the United States resident within the United States. If any such power had been intended at the time of the adoption of the Constitution, "it," to use the language of Mr. Justice Cooley, but in another connection, "would be somewhat startling to our people and would be likely to lead thereafter to a more careful scrutiny of the charters of government framed by them, lest, sometime, by an inadvertent use of words, they might be found to have conferred upon some agency of their own the legal authority to take away their liberties altogether." See People ex rel. Le Roy v. Hurlbut, 24 Mich. 97, 9 Am. Rep. 103.

The judgment of the District Court is reversed and the cause is remanded for further proceedings according to law.

BIRDZELL, J., being disqualified, did not participate, and HON. A. G. BURR, Judge of the Ninth Judicial District, sat in his place.

ROBINSON, J. (dissenting). In Fargo, North Dakota, there was an old resident named Hagen. He scorned delights and lived laborious

days, and when about to depart for the land of rest he transferred all his property by will to a brother in Wisconsin, a sister in California, and to a sister in Norway, whose transfer tax of 25 per cent was, $8,000. It is claimed that in so far as the transfer tax discriminates against the estate of the defendant it is void, for the reason of a treaty between the United States and Norway especially providing against any such discrimination by one state or country against the citizens of the other. And so it has been held by the supreme court of Washington in an exceedingly well-reasoned case, which is directly in point, on the same identical treaty. (Re Stixrud, 58 Wash. 539, 33 L.R.A.(N.S.) 632, 109 Pac. 343.) All treaties made pursuant to the Constitution of the United States become the supreme law of the land and the judges of every state are bound thereby. While it seems clear that the claim made under the treaty is conclusive, it seems equally clear that our Constitution affords an ample remedy against such an unjust transfer tax.

In this case the majority decision is based on the laws of feudalism, and not on the Constitution of our state. The reasoning is based on the rules of law which resulted from the Norman Conquest, but the state does not stand in the place of William the Conqueror. It is no lord paramount. It has no kingly prerogatives. It does not exist by divine right. It is merely a corporate entity which we, the people, have devised for the purpose of protecting our natural rights, and it has no right to rob any person.

The Inheritance Tax Law shows on its face that it is a thief and a robber. It imposes a tax of from 1 to 25 per cent on inheritances, gifts, grants, and transfers made in contemplation of death. The act is void unless its purpose is to impose a tax. Its title is: "An Act to Provide for Taxation and Fixing the Rate of Taxation." And by § 61 of the Constitution the subject of every act must be expressed in its title.

By § 176 of the original Constitution all property must be taxed by uniform rule according to its value in money, and by this section as amended, taxes must be uniform upon the same class of property. While property may be classified for taxation, the classing must depend upon the character of the property, and not on the character of its owner, the color of his hair, or his relationship to any person. Unless the act pertains to taxation, it is in conflict with § 61 of the Consti-

tution, and if it does relate to taxation, it conflicts with § 176 of the Constitution as amended, because the various taxes which it imposes depend on the relationship of parties to one another, and not on any classification of property. If such an unjust system of taxation and confiscation has been sustained in any state under a similar Constitution, it is because the judges did not know any better, and because they give to modern Constitutions and the natural rights of man less consideration than they do to the laws of feudalism.

According to our Bill of Rights, Section 1: "All men are by nature equally free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing and protecting property and reputation; and pursuing and obtaining safety and happiness. Section 2. *Government is instituted for the protection, security and benefit of the people."*

This means that every man has a right to acquire property by gift, sale, or purchase, and the right to acquire and protect property is no greater than the right to dispose of it by sale or gift. According to the fundamental principles of this state, when by any just means a person acquires title to property, it belongs to him and his heirs, and when a man can no longer use his property, it is his right and duty to devise and transfer it to his heirs, and the state has no right to rob either the living or the dead.