CAROLINE LAURA TROTT, Leila Florence Trott, Leila S. Starr, Clara Jones, Kate Jones, Caroline Jones, and Bessie Jones, Respondents, v. STATE OF NORTH DAKOTA, Appellant.

(4 A.L.R. 1372, 171 N. W. 827.)

**Taxation — effect of stipulation between parties of the action.**

1. A stipulation fairly made, relating to the conduct of a pending case, will not be set aside where such action would be likely to result in serious injury to one of the parties thereto.

**Courts — jurisdiction — procedure presumed regular.**

2. The district court is a court of general jurisdiction, and where the parties to a controversy the subject-matter of which is properly within the jurisdiction of such court voluntarily adopt a certain mode of procedure in submitting the controversy for determination, they will not thereafter be heard to say that the procedure adopted was irregular and improper.

**Treaties — treaty superior to laws or Constitution — duty of courts in upholding treaties.**

3. A treaty made under the authority of the United States and within the scope of the legitimate powers vested by the Constitution is the supreme law of the land; its provisions supersede and render nugatory all conflicting provisions in the laws or constitution of any state; and in case such conflict arises it is the duty of the judges of every state to uphold and enforce the treaty provisions.

**Treaties — inheritance tax laws — effect of conflict between laws and treaty.**

4. The treaty between the United States and Great Britain (Act March 2, 1899, 31 Stat. at L. 1939), which provides that the citizens or subjects of each of the contracting powers may dispose of their personal property within the territories of the other, by testament, donation, or otherwise, and their heirs, legatees, and donees being citizens or subjects of the contracting portion, whether residents or nonresidents, shall succeed to their said personal property, paying such duties only as the citizens or subjects of the country where the property lies shall be liable to pay in like cases, renders nugatory, as to citizens or subjects of Great Britain, the provisions of the North Dakota Inheritance Tax Law, which imposes upon nonresident aliens a larger tax than that imposed upon citizens or resident aliens; and the citizens or subjects of Great Britain are chargeable only with the same tax as that chargeable against citizens and resident aliens.

Opinion filed February 27, 1919.

From an order of the District Court of Grand Forks County, *Cooley,* J., defendant appeals.

Affirmed.

*Wm. Langer,* Attorney General, *George K. Foster,* Assistant Attorney General, *Geo. E. Wallace* and *F. E. Packard,* for appellant.

"The plaintiffs' complaint does not show whether or not the tax was paid under protest, and where paid without protest it cannot be recovered." Diocese v. Cass County, 28 N. D. 209; Lewis v. San Francisco, 2 Cal. App. 113, 82 Pac. 1196; Phoebus v. Manhattan Social Club, 105 Va. 144, 8 Ann. Cas. 667; 45 Am. Dec. p. 156 and note, Compulsion of Legal Process; Cooley, Taxn. 3d ed. 1400, note 2, 1495.

"Money voluntarily paid with full knowledge of the fact and circumstances under which it is paid, although paid under a mistake of the payer's legal rights and obligations, cannot be recovered back." Baltimore v. Lefferman, 45 Am. Dec. 148; see also 8 Ann. Cas. 699, note and 10 Ann. Cas. 1050, note, Comp. Laws 1913, § 8532.

"A decision of the county court herein is a final determination of the rights of the plaintiffs and the state in the matters adjudicated." Comp. Laws 1913, § 6579; Joy v. Elton, 9 N. D. 428; Sjoli v. Hagenson, 19 N. D. 82; Re Rice, 56 App. Div. 253, 61 N. Y. Supp. 911, 68 N. Y. Supp. 1157; Re Barnum, 129 App. Div. 418, 114 N. Y. Supp. 33.

*McIntyre & Burtness,* for respondents.

"Treaties made under the authority of the United States shall be the supreme law of the land, and the judges in each state shall be bound thereby." U. S. Const. art. 6; Hauestein v. Lynham, 100 U. S. 483, 490, 25 L. ed. 628, 630; Geofroy v. Riggs, 133 U. S. 258, 266, 33 L. ed. 642, 644; McKeown v. Brown, 149 N. W. 593; Re Moynihan, 151 N. W. 504; Re Peterson, L.R.A.1916A, 469, 151 N. W. 66. See note in L.R.A.1916A, 474.

CHRISTIANSON, Ch. J. One Ormand Peniston, a resident of Grand Forks county in this state, died testate, October 8, 1913, and his last will and testament was duly admitted to probate in the county court of Grand Forks county on December 20, 1913. The plaintiffs herein were legatees under said will, and by the final decree there was set over to each of said plaintiffs their respective distributive shares of said estate.

The plaintiffs were and are British subjects. By an order of the county court entered on or about January 30, 1915, the county court fixed the cash value of such distributive shares and fixed the amount of inheritance tax due thereon. The tax computed against the shares of said plaintiffs was at the rate of 25 per cent. This tax was imposed under § 8977, Compiled Laws 1913, which provides: "Upon the transfer of property in any manner hereinbefore described to or for the use of collateral relations or strangers in blood who are aliens not residing in the United States, or to or for the use of any corporation which is not chartered by the authority of the government of the United States or of any state, a tax of 25 per centum shall be levied and collected." The plaintiffs paid the inheritance tax so imposed. They thereupon brought the instant action in the district court of Grand Forks county, setting up the facts above recited, alleging that they were compelled to pay and did pay the respective sums stated; and further alleging that the said Inheritance Tax Law of this state in so far as it undertakes to impose a tax of 25 per cent on inheritance by aliens, who are British subjects, is invalid and void, in that it is in conflict with the treaty between the United States and Great Britain ratified July 28, 1900, and proclaimed August 6, 1900. The state interposed a general demurrer to the complaint. The demurrer was overruled and the defendant appeals.

The order appealed from was entered October 8, 1915. The appeal was taken November 22, 1915. About the time the appeal was taken the attorneys for the plaintiffs and the then attorney general of this state entered into a stipulation "that the only question that is to be submitted for determination on the appeal in this case is the question of the validity of § 2 of the Inheritance Tax Laws, being chapter 185 of the Session Laws of 1913, in so far as the same prescribes an inheritance tax of 25 per cent on inheritances by collateral relations or strangers in blood, who are aliens not residing in the United States, in so far as the same applies to the plaintiffs who are British subjects and who reside in the Bermudas, with the exception of one who resides in British Guiana, South America; it being agreed and understood that if the said provision of the said law is valid and binding upon the plaintiffs, then recovery cannot be had in said action, but if said provisions are invalid as against said plaintiffs, recovery shall be had for the amount demanded in the complaint."

On April 16, 1918, the present attorney general applied to this court for an order relieving defendant from the stipulation. From the showing submitted upon the hearing of such application, it appears that there was considerable correspondence between the attorneys for the plaintiffs and the then attorney general before the commencement, and during the pendency, of the instant action. In a letter written July 5, 1915, the plaintiffs' attorneys called the attention of the attorney general to the provisions of the treaty, and certain decisions, and concluded with the request that the attorney general "advise as to the conclusion reached and as to whether or not you would advise the state treasurer to refund the amount paid." The attorney general replied under date, July 10, 1915, stating in part, "I have read the cases referred to in your letter as well as a few others, and I am inclined to the view that the conclusion you have reached with respect to this matter is correct. It would seem from the authorities cited that our statute is in conflict with article 2 of the treaty between the United States and Great Britain. . . . However, under the circumstances I would hardly feel justified in advising the state treasurer to refund the amount paid in your case. In other words, I would prefer that that portion of our Inheritance Tax Law be first declared unconstitutional by the courts before advising a refund." Thereupon plaintiffs' attorneys prepared the summons and complaint in the instant case and mailed the same to the attorney general, who admitted service thereon, and returned the same with a letter and a general demurrer, stating: "I have concluded to demur to the complaint in this action *merely for the purpose of determining the constitutionality of the statute involved.* I am not raising the question of proper parties plaintiff, *the purpose of the demurrer being only as stated to determine the validity of the statute.*" It will be noticed that the stipulation in question is in harmony with the correspondence, and merely continued the original policy of counsel. The avowed purpose of the application to be relieved from the stipulation is to enable the defendant to raise certain procedural questions, *viz.,*—that the plaintiffs either should have appealed from the order of the county court fixing the tax, or moved for a vacation of such order.

Assuming for the sake of argument that defendant's contention as to the matter of remedy is correct, and that by being relieved from the

stipulation it might prevail in this action upon this ground, we then have this situation that the plaintiffs by reason of their reliance upon the letters of the attorney general, and the stipulation, would be de prived of all remedy. For at the time the action was commenced,—nay at the time the appeal herein was taken and the stipulation in question signed,—the plaintiffs might still have applied to the county court for a rehearing or a vacation of the order fixing the tax, and, in event of an adverse decision by the county court, appealed therefrom. But interim the signing of the stipulation and the application to be relieved therefrom, the time in which to apply to the county court for relief has expired. See Fischer v. Dolwig, 29 N. D. 561, 151 N. W. 431; Reichert v. Reichert, 41 N. D. 253, 170 N. W. 621. It is a maxim of our jurisprudence that "one must not change his purpose to the injury of another." Comp. Laws 1913, § 7246. Also, that "he who consents to an act is not wronged by it." Comp. Laws 1913, § 7249. And that "acquiescence in error takes away the right of objecting to it." Comp. Laws 1913, § 7250. The power to relieve from a stipulation should be exercised to promote justice, and not to defeat it. To grant defendant's application and thereby in effect extend the scope of the demurrer and subject plaintiffs to the resulting burden, inconvenience, and possible loss, would, in our opinion, be a violation of the plainest principles of justice. See 36 Cyc. 1294, et seq. See also 3 C. J. 718, et seq.

It is true, consent of the parties cannot give jurisdiction of an action, where the subject-matter thereof is one in excess of the jurisdiction of the court. But it must be remembered that the district court is one of general jurisdiction. It has "original jurisdiction, except as otherwise provided in the Constitution, of all causes both at law and equity." N. D. Const. § 103. Hence, it "has power to determine all controversies or questions of difference which can possibly be made the subject of civil action." Lobe v. Bartaschawich, 37 N. D. 572, 164 N. W. 276. See also Minneapolis, St. P. & S. Ste. M. R. Co. v. Stutsman, 31 N. D. 597, 154 N. W. 654. It is not denied that the district court has jurisdiction over the subject-matter and might properly decide the questions involved, provided the proper procedure had been adopted in bringing the controversy before that court. The point which defendant desires to raise is, not want of jurisdiction over the

subject-matter of controversy, but that the wrong method was adopted in bringing the same before the court for determination. But the procedure was adopted by the parties themselves. They voluntarily conferred jurisdiction upon the district court, and restricted the issues to the one question of whether the state law conflicted with the provisions of the treaty. And on this appeal they expressly stipulated that this was the only question to be submitted. So, leaving all questions as to the propriety of the procedure on one side, we are of the opinion that the defendant should not now be permitted to depart from the issue which it framed in the court below, and which it has formally stipulated to be the only one which it intended or desired to raise on this appeal.

This brings us to the merits of the appeal. As already indicated the Inheritance Tax Law of this state imposes a considerable higher tax upon aliens not residing in the United States, than upon citizens of, or aliens residing in, this country. The constitutionality of this feature of the law was sustained in Moody v. Hagen, 36 N. D. 471, L.R.A. 1918F, 947, 162 N. W. 704, Ann. Cas. 1918A, 933. But the plaintiffs in this case contend that the provision in question has no application to them, under the treaty existing between this nation and Great Britain. The particular treaty provision invoked reads as follows: "The citizens or subjects of each of the contracting parties shall have full power to dispose of their personal property within the territories of the other, by testament, donation, or otherwise; and their heirs, legatees, and donees, being citizens or subjects of the other contracting party, whether residents or nonresidents, shall succeed to their said personal property, and may take possession thereof either by themselves or by others acting for them, and dispose of the same at their pleasure, paying such duties only as the citizens or subjects of the country where the property lies shall be liable to pay in like cases." [31 Stat. at L. 1939.]

The Constitution of the United States places a treaty on the same footing with and of like obligation to an act of Congress. Both are declared by the Constitution to be the supreme law of the land. U. S. Const. art. 6; Whitney v. Robertson, 124 U. S. 190, 194, 31 L. ed. 386, 388, 8 Sup. Ct. Rep. 456. A treaty made under the authority of the United States and within the scope of the legitimate powers

vested by the Constitution supersedes and renders nugatory all conflicting provisions in the laws or constitution of any state, and in case such conflict arises it is the duty of the judges of every state to uphold and enforce the treaty provisions. U. S. Const. art. 6; 4 Enc. U. S. Sup. Ct. Rep. 214.

The treaty provision quoted above is neither obscure nor ambiguous. To any reader having acquaintance with the ordinary and approved usage of our language, it suggests at once the purpose and intent of the contracting parties to eliminate and forbid all discrimination between the subjects of the contracting governments with respect to the right of inheritance of personal property, and the amount of duties or taxes which the citizens or subjects of either of the contracting governments may be required to pay upon such inheritance. In our opinion, the plaintiffs are correct in their contention that they cannot be subjected to any greater tax than if they were resident heirs. See Re Moynihan, 172 Iowa, 571, L.R.A.1916D, 1127, 151 N. W. 504, 154 N. W. 904. See also McKeown v. Brown, 167 Iowa, 489, 149 N. W. 593. The moneys exacted from the plaintiffs in excess of what the treaty required them to pay were therefore exacted in violation of the supreme law of the land. If the defendant retains this excess, it will simply be retaining money, which under the terms of the treaty belonged to the plaintiffs, and which the defendant had no right to exact from them.

It follows from what has been said that the order appealed from must be affirmed. It is so ordered.

BRONSON, J., being disqualified, did not participate.