FORD MOTOR CO., a Corporation, Respondent, v. STATE OF NORTH DAKOTA, et al. STATE OF NORTH DAKOTA, Appellant.

(231 N. W. 883.)

Opinion filed August 5, 1930.

James Morris, Attorney General, Charles Simon, Assistant Attorney General, and Iver Acker, State Tax Commissioner, for appellant.

*O'Hare, Cox & Cox,* for respondent.

CHRISTIANSON, J.   The plaintiff, which is a Delaware corporation, brought this action against the state of North Dakota, the tax commissioner and the state auditor of that state for the purpose of recovering $55,580.58, which it is alleged the plaintiff paid in excess of the income tax actually and legally due from it to the state of North Dakota for the years 1921 and 1922.

It appears from the complaint that the litigation arises out of a difference of opinion between the plaintiff and the tax commissioner of North Dakota in 1923 as to the proper basis of allocating or computing plaintiff's income for taxation in this state.   It is alleged in the complaint that the plaintiff made due returns and paid its income tax for the years 1921 and 1922 but that the tax commissioner in 1923 made an additional assessment against the plaintiff for the years 1921 and 1922 aggregating $55,580.58 and that plaintiff, "on or about July 16, 1923, involuntarily and for the purpose of avoiding penalties and forfeitures and as a result of the demand of the tax commissioner paid the said sum to the treasurer of the state of North Dakota, under written protest."   It is further alleged that the plaintiff made due demand for a refund of said moneys but that no action was taken by the tax commissioner upon said application for refund; that thereafter and on or about January, 1929 the plaintiff made a further demand in writing upon the tax commissioner for a refund of said sum and that on January 23, 1929 the then tax commissioner in writing formally approved and allowed the application; that on April 5, 1929 the plaintiff filed with the state auditor its said claim and demand for payment; and that the same was rejected by the state auditing board on said April 5, 1929.   This action was instituted April 8, 1929.   The defendants demurred to the complaint on the grounds: (1) That the complaint does not state facts sufficient to constitute a cause of action; and (2) that the court has no jurisdiction over the defendants, or the subject-matter of the action.   The district court sustained the demurrer as to the defendants, the state auditor and the tax commissioner, but overruled it as to the state of North Dakota, and the state has appealed.

Appellant contends that the complaint fails to state a cause of action

and that the court has no jurisdiction over the defendant state of North Dakota or the subject-matter involved: (1) Because the state has not consented to be sued upon a cause of action such as that which is set forth in the complaint; and (2) that the statute, under which the tax in question was imposed and collected, prescribed a remedy whereby a taxpayer could obtain a refund of any income taxes illegally collected by the state; that the remedy so prescribed is exclusive and that the plaintiff having failed to pursue it may not maintain an action.

These are the only issues presented for determination on this appeal. There is no contention that the complaint does not show that the plaintiff paid, under protest, the amount claimed in excess of the amount of income tax which it was actually and legally required to pay under the laws of the state of North Dakota. The demurrer admits that such payment was made; but appellant asserts that notwithstanding this fact the plaintiff has no right of action against the state for the two reasons stated.

(1) Has the state consented that a suit may be instituted against it upon a claim of the character in question here? Unless it has given such consent then no suit lies. 25 R. C. L. p. 412. In the constitution of this state it is provided: "Suit may be brought against the state in such manner, in such courts, and in such cases, as the legislative assembly may, by law, direct." N. D. Const. § 22. In conformity with this constitutional direction the legislative assembly enacted the following statute:

"An action respecting the title to property, or arising upon contract may be brought in the district court against the state the same as against a private person. When such actions are not of a local nature they shall be brought in the county of Burleigh. The plaintiff at the time of commencing such action shall file an undertaking with sufficient surety to be approved by the clerk of court to the effect that he will pay any judgment for costs that may be rendered against him." (Comp. Laws 1913, § 8175.)

It has been said that the purpose and effect of statutory provisions like § 8175, supra, "as commonly understood, are undoubtedly nothing more than to refer to the judiciary the settlement of the questions of law and fact involved in the claims, and the determination in the form of a judgment of the rights of the parties." 25 R. C. L. p. 416.

It is conceded by both parties that the consent of the state to be sued must be found, if at all, within § 8175, supra. It is also conceded that the action is one for moneys had and received. It is the claim of the plaintiff that such action is one arising upon contract and hence falls within the provisions of § 8175, supra. The appellant, on the other hand, contends that § 8175, supra, does not constitute a consent on the part of the state to be sued upon causes arising upon implied contract; but that this section merely constitutes a consent on the part of the state to be sued on any express contract that the state may have entered into. We have given these respective contentions due and careful consideration; have examined with care the arguments presented and authorities cited and have come to the conclusion that § 8175, supra, constitutes a consent on the part of the state to be sued in all cases "arising upon contract," within the ordinary accepted legal meaning of that term. Hence, an action for moneys had and received may be maintained against the state under said section; for the authorities are all agreed that an action for moneys had and received is one arising upon contract. Naderhoff v. Geo. Benz & Sons, 25 N. D. 165, 186, 47 L.R.A.(N.S.) 853, 141 N. W. 501, 510; 41 C. J. 28; People v. Bennett, 6 Abb. Pr. 343, 348; Coats v. Arthur, 5 S. D. 274, 58 N. W. 675; 19 Standard Proc. 842; 3 Williston, Contr. § 1618. It will be noted that the section otherwise authorizes actions to be brought against the state respecting title to property, and no limitation is made as to the kind of property. Neither is there any limitation as to the kind of contract out of which an action must arise. At the time this statute was adopted, and for a long time prior thereto, the laws in this jurisdiction defined contracts as being either express or implied. Civ. Code 1877, § 915. If the legislature had intended that the state should be subject to suit only upon express contract it would doubtless have said so. The authorities are generally agreed that an action at law for the recovery of taxes illegally collected from a taxpayer and paid by him under protest is one arising upon contract. 26 R. C. L. p. 455; 37 Cyc. 1185; State v. Mutual L. Ins. Co. 175 Ind. 59, 42 L.R.A. (N.S.) 256, 93 N. E. 213; 3 Williston, Contr. § 1618; 3 Cooley, Taxn. 4th Ed. § 1300. And this court has held that a taxpayer who has been compelled to pay taxes which he did not owe may maintain an action against the county which collected the tax. St. Anthony

& D. Elevator Co. v. Bottineau County, 9 N. D. 346, 50 L.R.A. 262, 83 N. W. 212; Bismarck Water Supply Co. v. Barnes, 30 N. D. 555, 570, L.R.A.1916A, 965, 153 N. W. 454; Malin v. La Moure County, 27 N. D. 140, 50 L.R.A.(N.S.) 997, 145 N. W. 582, Ann. Cas. 1916C, 207; Chicago, M. & P. S. R. Co. v. Bowman County, 31 N. D. 150, 153 N. W. 986. In Trott v. State, 41 N. D. 614, 4 A.L.R. 1372, 171 N. W. 827, an action was brought against the state for the recovery of inheritance taxes which had been collected in excess of the amount legally due. No question was raised as to the right to maintain the action, but it was assumed that the case was one in which the state had consented to be sued. In the recent case of District of Columbia v. Thompson, 281 U. S. 25, 74 L. ed. 677, 50 S. Ct. 172, the Supreme Court of the United States had occasion to consider the right of a taxpayer to bring action against the District of Columbia for the recovery of special assessments collected by it for certain improvements which had never been made. In the opinion in that case the court said:

"Under the undisputed facts, we think the District was under an obligation imposed by law to return, as for a failure of consideration, the assessment of benefits that had been paid by the plaintiff.

"In Valentine v. St. Paul, 34 Minn. 446, 448, 26 N. W. 457, benefits had been assessed against the plaintiff's land by reason of the proposed opening and extension of a street, and he had been compelled to pay the amount of this assessment to redeem his land from sale. No part of the street having been opened, and the project for opening and extending it having been abandoned by the city, he was held entitled to recover the amount paid as upon a failure of the consideration for the assessment. The court said: 'The effect of the abandonment by the city of the project of "extending and opening" the proposed street for and on account of which, and which only, the assessment was made, is that the consideration of the assessment has wholly failed. So that the city stands in the position of holding in its treasury money collected from the plaintiff which it has no right in equity, good conscience, or common honesty to retain, because the purpose for which it was collected has been completely abandoned. In such circumstances no statute is required to impose upon the city a legal obligation to make restitution. An action lies as at common law for money had and re-

ceived. . . . That the city is a municipal corporation does not distinguish it from a private person in this respect.' . . .

"We think that these circumstances established, as a matter of reasonable and necessary inference, the fact that the District had abandoned the purpose of extending the street over the condemned strip; and that, this being so, for the reasons well stated in the Valentine case, the District was properly required to return to the plaintiff, as for failure of consideration, the amount of the assessment that she had paid, which it had retained contrary to equity and good conscience and held, by implication of law, as money had and received to her use.

"As the basis of the plaintiff's cause of action was the obligation imposed by law upon the District by reason of the failure of consideration for the assessment of benefits, it was one, we think, of which the municipal court had jurisdiction as a claim for debt arising out of an 'implied' contract not exceeding $300."

According to the United States Supreme Court an action by a taxpayer to collect moneys received from him by a municipality in such circumstances that there was no legal right to collect or retain the money, is an action arising upon contract, and this is in accord with the rulings of this court in similar or analogous cases.

In our opinion this is an action "arising upon contract" within the purview of § 8175, supra. Furthermore, the law under which the tax was assessed clearly shows that the legislative assembly contemplated that where the taxpayer made a truthful return, suit should lie on his behalf against the state to recover income tax payments which might have been exacted from him illegally or in excess of the amount legally due from him under such law. The law provided:

"When a second assessment is made in the case of any list, statement or return, which in the opinion of the Commissioner was false or fraudulent, or contained any understatement or undervaluation, no tax collected under such assessment shall be recovered by any suit, unless it is found or determined that the said list, statement or return was not false or fraudulent and did not contain any understatement or undervaluation." Laws 1919, chap. 224, § 14, subd. (c).

(2) Did the plaintiff have a statutory remedy for the recovery of the payments involved in this action? This question resolves itself into a construction of the income tax laws of this state. The original

income tax law was enacted by the legislative assembly in 1919. Laws 1919, chap. 224. Certain amendments were made by successive legislative assemblies, but there was no law in force in North Dakota prior to July 1, 1923, which made any provision for a refund of income tax payments made by a taxpayer in excess of the amount legally due from him. The legislative assembly in 1923 enacted a complete and comprehensive income tax act. Laws 1923, chap. 312. The title recites that it is an act to amend and re-enact the various statutes of North Dakota relating to income tax (such acts being specifically enumerated). The act was approved March 7, 1923, but did not take force or become effective until July 1, 1923. The 1923 law contained the following provisions:

"Sec. 38. A taxpayer may apply to the tax commissioner for revision of the tax assessed against him at any time within two years from the time of the filing of the return or from the date of the notice of the assessment of any additional tax. The tax commissioner shall grant a hearing thereon, and if upon such hearing, he shall determine that the tax is excessive or incorrect, he shall resettle the same according to the law and the facts and adjust the computation of the tax accordingly. The tax commissioner shall notify the taxpayer of his determination and shall cause to be refunded to the taxpayer the amount, if any, paid in excess of the tax found by him to be due. If the taxpayer has failed, without good cause, to file a return within the time prescribed by law, or has filed a fraudulent return, or, having filed an incorrect return, has failed, after notice, to file a proper return, the tax commissioner shall not reduce the tax below double the amount for which the taxpayer is found to be properly assessed. Refund claims properly verified and approved by the tax commissioner shall be audited and paid as are other claims against the state.

"Sec. 39. The determination of the tax commissioner upon any application made by a taxpayer for revision of any tax, may be reviewed in any court of competent jurisdiction by a complaint filed by the taxpayer against the tax commissioner in the county in which the taxpayer resides or has his principal place of business, within thirty days after notice by the tax commissioner of his determination, given as provided in Section 38 of this act. Thereupon appropriate proceedings shall be had and the relief, if any, to which the taxpayer may

be found entitled may be granted, and any taxes, interest or penalties paid, found by the court to be in excess of those legally assessed, shall be ordered refunded to the taxpayer with interest from time of payment.

"Sec. 46. Of the revenue collected under this act, the state treasurer shall annually retain, in his hands, a fund in the sum of $10,000 out of which he shall pay any refunds to which taxpayers shall be entitled under the provisions of this act. Any unclaimed balance of such fund at the end of each year shall be paid into the state treasury to the credit of the general fund. The balance of the money collected under the provisions of this act, shall be paid into the state treasury to the credit of the general fund for the purpose of defraying the general expenses of the state government."

It is the contention of the appellant that the foregoing provisions of the 1923 law became and were applicable to excessive or illegal income tax payments exacted under the prior law and that, hence, they furnished plaintiff a statutory remedy for the recovery of the payments in question here. The respondent, on the other hand, contends that these provisions are applicable only to payments made under the 1923 law and have no application to income taxes assessed and collected under prior laws. In support of this contention respondent calls attention to the various provisions of chapter 312, Laws 1923, and argues that the language thereof evidences an intention on the part of the legislature that the above quoted sections thereof, to-wit, §§ 38, 39 and 46, should be applicable only to taxes assessed under that act, and, hence, that they would not be applicable to excessive or illegal income tax payments exacted under the law in force prior to July 1, 1923. Respondent also invokes the rules of contemporaneous and practical construction and calls attention to the fact that after the 1923 law had become operative the then tax commissioner requested the attorney general to give his opinion upon the question whether the appropriation made in said 1923 law for refunds to taxpayers was available for use by the tax commissioner in making refunds for taxes assessed under the 1919 law; that on December 11, 1923 the attorney general's office rendered an opinion which held that said §§ 38, 39 and 46, chapter 312, Laws 1923, had no application to controversies arising under the former income tax laws but was intended to apply, and did apply, only

to taxes assessed and collected under said chapter 312, Laws 1923; that the attorney general's opinion was accepted as a correct exposition of law, not only by the tax commissioner but by two subsequent legislative assemblies. Laws 1925, chap. 202; Laws 1929, pp. 393, 394. In short, it is the contention of the respondent: (1) That the language of the statute evidences an intention on the part of the legislature that §§ 38, 39 and 46, chapter 312, Laws 1923, should not be applicable to proceedings by a taxpayer for the recovery of excessive or illegal income tax payments exacted from him by virtue of assessments levied under the laws in force prior to July 1, 1923; but (2) that if the language is deemed doubtful or ambiguous the construction placed upon it by those charged with the duty of interpreting and applying it is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it be clear that such construction is erroneous. 25 R. C. L. pp. 1042–1047; State ex rel. Gammons v. Sorlie, 56 N. D. 650, 219 N. W. 108.

We have carefully considered the arguments presented by the respective parties. The question involved (as does every question of statutory construction) resolves itself to one of ascertaining and giving effect to the legislative intention. That intention must be sought, first, in the language of the statute and if that language is ambiguous or of doubtful meaning, then resort may be had to certain extrinsic aids. A careful examination and consideration of the provisions of chapter 312, Laws 1923, leads us to the conclusion that the language of the enactment evidences a legislative intention that §§ 38, 39 and 46 of that act should operate prospectively only; and that there was no intention that they should apply to payments made under laws in force prior to the time said chapter came into effect as a law. Chap. 312, Laws 1923, is in reality a new and complete enactment on the subject to which it relates. There is no attempt to follow even the sections as contained in the former acts. The various provisions are re-written; the arrangement is new and in many instances the subject-matter is wholly different. The sections quoted above have no counterparts whatsoever in the former legislation. The fact that the title of the act states that it is an amendment and re-enactment of existing laws does not change the rule of statutory construction. The question is still one of legislative intention.

"An amendatory act, like other legislative enactments, takes effect only from the time of its passage and has no application to prior transactions unless an intent to the contrary is expressed in the act or clearly implied from its provisions . . . ." 26 Am. & Eng. Enc. Law, 2d ed. p. 712.

"Unless the contrary intent is clearly indicated, the amended statute is to be construed as if the original statute had been repealed and a new and independent act in the amended form had been adopted." 25 R. C. L. p. 1067.

In speaking of the effect of an amendatory act (under a constitutional provision similar to § 64 of the Constitution of North Dakota) Sutherland says:

"The amendment operates to repeal all of the section amended not embraced in the amended form. The portions of the amended sections which are merely copied without change are not to be considered as repealed and again enacted, but to have been the law all along; and *the new parts or the changed portions are not to be taken to have been the law at any time prior to the passage of the amended act. The change takes effect prospectively according to the general rule.*" 1 Lewis's Sutherland, Stat. Constr. pp. 442, 443.

We find nothing in chapter 312, Laws 1923, indicating any intention on the part of the legislature that the new provisions embodied in that act should be retroactive in their operation. The presumption is that the legislature intended that they should operate prospectively only.

Appellant argues that the general rule that statutes should be construed so as to have prospective action only is not applicable to statutes of limitations or statutes relating to procedure, and authorities are cited tending to support the argument thus advanced. Leaving on one side all question as to whether, and to what extent, the rule contended for by the appellant as regards the construction of procedural statutes may have been modified or changed in this state (see Comp. Laws 1913, § 7320; Jensen v. Frazer, 21 N. D. 267, 130 N. W. 832) the question as to whether a statute is to operate prospectively only, or retrospectively as well, remains fundamentally one of legislative intention. And we are all agreed that whatever rule be applied, §§ 38, 39 and 46, chap. 312, Laws 1923, were not intended to be applicable to

taxes assessed and collected under laws in force before said chapter 312 became operative. The very language of § 38, fixing the limitation for proceedings to be had to obtain a refund, negatives rather than affirms any intention on the part of the legislature that the provisions relating to refund should be applicable to taxes assessed and collected under former laws. It will be noted that § 38 says: "A taxpayer may apply to the tax commissioner for revision of the tax assessed against him at any time within two years from the time of the filing of the return or from the date of the notice of the assessment of any additional tax." Under the 1919 income tax law each person subject to taxation became taxable for his income during the calendar year 1919 and was required to file a return on or before the first day of March, 1920. Chapter 312, Laws 1923 contains no provision prescribing the time within which a taxpayer who had made payment under the 1919 act might make application for refund. If the act was intended to apply to assessments made and taxes collected under the 1919 law, then a taxpayer who had made payment in 1920 would have been barred from all relief and a taxpayer who had made payment in 1921 might have been afforded only a relatively small time in which to make application for refund. It would seem that if the legislature had any intention that the procedure therein prescribed and the appropriation therein made should be applicable to taxes assessed and collected under the former laws that it would have so declared in specific terms and fixed a time within which such applications might be made. Clark v. Beck, 14 N. D. 287, 103 N. W. 755.

If we deemed the language of the statute to be doubtful or ambiguous, the construction placed upon it by those charged with its execution and application would, in the circumstances disclosed in this case, be entitled to great weight and should not be disregarded or overturned unless such construction is shown to be clearly erroneous. 25 R. C. L. pp. 1042–1047; State ex rel. Gammons v. Sorlie, 56 N. D. 650, 219 N. W. 108. For, it is undisputed that the attorney general's office, at the request of the then tax commissioner, on December 11, 1923 rendered an opinion to the effect that §§ 38, 39 and 46, chap. 312, Laws 1923, were intended to apply, and did apply, only to taxes assessed under that law and had no application to applications for refund of taxes assessed under former laws. It is likewise undisputed that the

then tax commissioner accepted the attorney general's construction of the law and applied it according to such construction for a long period of time. An examination of the legislative enactments referred to by the respondent also clearly shows that both the legislative assembly and the governor during the same period of time recognized the law to be as construed by the attorney general. Both in 1925 and in 1929, the legislature passed bills appropriating money to pay refunds to taxpayers for "overpayment of taxes assessed under the 1919 tax law." The first enactment (chapter 202, Laws 1925) referred to the opinion of the attorney general and declared that owing to the fact that according to such opinion the appropriation in the 1923 law was not available for refunds under the 1919 law, an emergency existed requiring that the appropriation made in said chapter 202, Laws 1925, for the purpose of paying refunds for overpayment of taxes assessed under the 1919 income tax law, be made effectual at once. The bill passed by the legislative assembly in 1929 appropriated "$56,000.00 or so much thereof as may be necessary for the purpose of paying taxes arising from the overpayment of income taxes assessed under the 1919 income tax law for the years 1919 to 1922, both inclusive." Laws 1929, pp. 393, 394. This latter bill was vetoed by the governor. In his veto message the governor said:

"I understand that this appropriation was passed for the purpose of refunding the sum of $55,580.00 to the Ford Motor Company, being the amount of certain income taxes which it is said was in the year 1923 illegally collected by the State Tax Department and paid under protest by this company. The State Tax Commissioner has advised the Legislature that this refund is legally and justly due to the Ford Motor Company.

"The bill, however, makes no reference to the Ford Motor Company, nor to the circumstances under which the claim arises. Owing to the size and character of the claim, and the long period of time during which it has been pending, I feel that it should not be paid by the State until its validity has been established in the Courts. . . ." Laws 1929, pp. 393, 394.

It follows from what has been said that the provisions of chapter 312, Laws 1923, relating to applications for the refund of excessive or illegal income tax payments were intended to apply only to assess-

ments made and collected under that law and were not intended to be applicable to assessments made and taxes collected under former laws. Hence, the plaintiff has no statutory remedy as claimed by the appellant. As indicated, however, both the legislative assembly (Laws 1919, chap. 224, § 14, subd. (c)) and the governor (Laws 1929, p. 394), contemplated that suit might be brought to recover income tax payments which had been exacted illegally or in excess of the amount due). The plaintiff having no statutory remedy, it may (the state having consented to such suit) maintain an action upon an implied contract for the moneys which were exacted from it, over its protest, and in violation of its legal rights. The complaint is not vulnerable upon either of the two grounds urged by the appellant. The order overruling the demurrer is affirmed.

BURKE, Ch. J., and BIRDZELL, NUESSLE, and BURR, JJ., concur.