[File No. 7315.]

IN THE MATTER OF THE ESTATE OF FELIX GONSKY, Deceased. Merchants National Bank & Trust Company of Fargo, Petitioner, v. GEORGE S. REGISTER, State's Attorney of Burleigh County, North Dakota, and all unknown heirs and persons interested in the Estate of Felix Gonsky, Deceased, United States of America, Appellant and State of North Dakota, Respondent.

(55 NW2d 60)

Opinion filed September 25, 1952

*P. W. Lanier,* United States District Attorney, and *Harry Lashkowitz,* Assistant United States District Attorney, for appellant.

*E. T. Christianson,* Attorney General, and *C. E. Brace,* Assistant Attorney General, for respondent.

CHRISTIANSON, J.   Felix Gonsky, the deceased, served as a soldier in the Army of the United States in World War II and was discharged as disabled on May 31, 1942.   Thereafter and during

the year 1942 the Insanity Board of Burleigh County, North Dakota, declared the said Felix Gonsky, now deceased, incompetent, and Romanus J. Downey was appointed by the County Court of Burleigh County, North Dakota, as the guardian of the person and estate of said Felix Gonsky. After serving as such guardian for a time the said Downey died and the said County Court of Burleigh County, North Dakota, duly appointed the Merchants' National Bank and Trust Company as the guardian of the person and estate of Felix Gonsky. On July 15, 1942, the said Felix Gonsky was committed to the Veterans' Hospital at St. Cloud, Minnesota, where he was furnished care and treatment until he died on January 1, 1950. Thereafter the Merchants' National Bank and Trust Company of Fargo was in due course appointed the administrator of the estate of said Felix Gonsky, deceased. The estate of said Felix Gonsky consisted of United States savings bonds and cash all derived from payments to him during his lifetime by the United States as retirement for disability as a regular army person. Felix Gonsky died intestate and left no known heirs surviving him.

In due course the administrator filed the final report and account and petition for distribution. The United States District Attorney for the district of North Dakota filed a petition on behalf of the United States of America wherein all the foregoing facts were set forth and it was further set forth that any and all the property of said Felix Gonsky, deceased, was derived from payments by the United States of America as retirement for his disability as a regular army person and that such property consisted of United States savings bonds and cash and it was prayed that all the estate of said Felix Gonsky, deceased, escheat to the United States of America less regular expenses of administration in accordance with and in conformity to the provisions of Sec 17 et seq, and Section 450(3) of Title 38, USCA. The county court denied the petition of the United States of America and made its final decree of distribution providing that all the residue of the estate consisting of United States savings bonds of the then present value of $4159.50 be paid to the Treasurer of the State of North Dakota under the provisions of Sec 30–2509 and Sec 30–2510 of the North Dakota Revised Codes

of 1943 to have and to hold the same for the use and benefit of the State of North Dakota under the provisions of Sec 30–2510, NDRC 1943. The United States appealed to the District Court from the decision of the County Court of Burleigh County. The district court rendered its decision that the decision of the county court was correct and dismissed the appeal from the decision of the county court. The United States of America has appealed to this Court from the decision of the district court.

The laws of this state provide:

"When the final report and account of the administrator of the estate of a decedent who appears to have left no heir succeeding to such estate is filed in county court, a citation shall issue thereon to all persons having an interest in the estate, requiring them to appear and show cause why the estate should not be distributed to the state of North Dakota. Such citation shall be published in the manner prescribed by section 30–0210." NDRC 1943, 30–2508.

"Upon the allowance and settlement of the final account, the final decree of distribution shall order all moneys remaining in the hands of the administrator after the payment of the expenses, debts, and charges of the estate in the order prescribed by section 30–1818, to be paid to the state treasurer, and the receipt of the treasurer shall be filed in such court." NDRC 1943, 30–2509.

"Property distributed to the state as provided in section 30–2509 shall be held by the state treasurer for a period of six years from the date of the decree making such distribution, and claim may be made therefor within the said period of six years in the manner in this chapter provided." NDRC 1943, 30–2510.

"When the whole or a portion of the estate of a decedent who appears to have left no heirs succeeding to his estate has been paid to the state treasurer as provided in section 30–2509, any person who is entitled to succeed to the estate and who is not a party or privy to any proceeding had in connection with the administration of such estate, and who has not appeared in any such proceeding, within six years after the date of the decree of final distribution, unless otherwise barred, may file a petition in the district court of the county in which the estate was pro-

bated, setting forth the petitioner's right to share in the estate, or the whole or a part of the proceeds thereof. Such petition shall be verified and shall set forth such facts as are relied upon to sustain the claimant's right to share in the said estate." ND RC 1943, 30–2511.

"If there is no one capable of succeeding under the provisions of this chapter, and the title fails from a defect of heirs, the property of a decedent devolves and escheats to the state and an action for the recovery of such property and to reduce it into the possession of the state or for its sale and conveyance may be brought by the attorney general or by the state's attorney in the district court of the county in which the property is situated." NDRC 1943, 56–0114.

Counsel for the State of North Dakota invokes these statutory provisions in support of the decision appealed from, and it is claimed that these provisions are applicable to and decisive of the controversy.

The United States of America on the other hand claims that the above quoted statutory provisions are not applicable to the controversy, and asserts that all residue of property in the hands of the administrator belong, and should be distributed, to the United States of America by virtue of the provisions of 38 USCA Sections 17, 17a, 17f and Sec 450(3) which read as follows:

"Effective ninety days after December 26, 1941, whenever any veteran (admitted as a veteran) shall die while a member or patient in any facility, or any hospital while being furnished care or treatment therein by the Veterans' Administration, and shall not leave surviving him any spouse, next of kin, or heirs entitled, under the laws of his domicile, to his personal property as to which he dies intestate, all such property, including money and choses in action, owned by said decedent at the time of death and not disposed of by will or otherwise, shall immediately vest in and become the property of the United States as trustee for the sole use and benefit of the General Post Fund, . . .

"The foregoing provisions are conditions precedent to the initial, and also to the further furnishing of care or treatment by the Veterans' Administration in a facility or hospital. The acceptance of care or treatment by any veteran admitted as such

to any Veterans' Administration facility or hospital after ninety days from December 26, 1941, and as well the continued acceptance of care or treatment furnished by the Veterans' Administration after said ninety days by any veteran who is then receiving the same shall constitute an acceptance of the provisions and conditions of this subchapter and have the effect of an assignment, effective at his death, of such assets in accordance with and subject to the terms and provisions of this subchapter and the regulations issued in accordance with and pursuant thereto." Sec 17.

"The fact of death of the veteran (admitted as such) in a facility or hospital, while being furnished care or treatment therein by the Veterans' Administration, leaving no spouse, next of kin, or heirs, shall give rise to a conclusive presumption of a valid contract for the disposition in accordance with this subchapter, but subject to its conditions, of all property described in section 17 of this title owned by said decedent at death and as to which he dies intestate." Sec 17a.

"Notwithstanding the crediting to said Post Fund of the assets, or proceeds thereof, of any decedent, whether upon determination by a court or the Veterans' Administration pursuant to the provisions of section 17 of this title, any person claiming a right to such assets may within five years after the death of the decedent file a claim on behalf of himself and any others claiming with the Administrator of Veterans' Affairs." Sec 17f.

". . . Provided further, That any funds in the hands of a guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, derived from compensation, automatic or term insurance, emergency officers' retirement pay, or pension, payable under said Acts, which under the law of the State wherein the beneficiary had his last legal residence would escheat to the State, shall escheat to the United States and shall be returned by such guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, or by the personal representative of the deceased beneficiary, less legal expenses of any administration necessary to determine that an escheat is in order, to the Veterans' Admin-

istration, and shall be deposited to the credit of the current appropriations provided for payment of compensation, insurance, or pension." Sec 450(3).

The Constitution of the United States provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." US Const, Art 6.

Trott v. State, 41 ND 614, 171 NW 827, 4 ALR 1372. The Acts of Congress embodied in 38 USCA, Sections 17, 17a, 17f and Sec 450(3) are presumed to be constitutional and valid enactments and no question has been raised as to their constitutionality.

The facts in this case clearly bring it within the provisions of Sections 17, 17a, 17f, Title 38, USCA. Felix Gonsky was a veteran who had been admitted to a Veterans' Hospital on July 14, 1942, by reason of his disability and remained in such institution as a patient until the time of his death on January 1, 1950. He was furnished and accepted care and treatment therein by the Veterans' Administration from the time of his admission on July 14, 1942, until the time of his death on January 1, 1950. He did not leave surviving him a spouse, next of kin, nor any heir entitled under the laws of his domicile to any personal property as to which he died intestate. It appeared to the county court in the proceedings there had for the administration of the estate of said Felix Gonsky, deceased, that he left no heirs succeeding to his estate (NDRC 1943, 30–2508) for in the final decree of distribution it is stated that "it further appearing, that after diligent inquiry no person can be found who is entitled to succeed to his property and that said decedent appears to have left no heir or heirs." And in the final decree of distribution it is ordered and adjudged and decreed that "all and singular of the above described personal property be paid to the State Treasurer of the State of North Dakota under the

provisions of Section 30–2509 and Section 30–2510 of the North Dakota Revised Code of 1943 . . . forever in the following proportions, to-wit: The Whole thereof. To have and to hold the same . . . for the use and benefit of the State of North Dakota under the provisions of Section 30–2510 of the NDRC of 1943." And it is directed and ordered "that said Administrator of the estate of said deceased, shall immediately, or as soon as conveniently can be, pay and deliver to the State Treasurer of North Dakota, its respective part or portion of the residue of the said estate as hereinbefore decreed and assigned."

Under the express provisions of the Act of Congress the acceptance of care or treatment by Felix Gonsky in the Veterans' Hospital by the Veterans' Administration constituted acceptance of the provisions and conditions of the act and had the effect of an assignment effective at his death of all his personal property as to which he died intestate "including money and choses in action, owned by said decedent at the time of death and not disposed of by will or otherwise" and that such property did "immediately vest in and become the property of the United States as trustee for the sole use and benefit of the General Post Fund." Sec 17. The fact of death of Felix Gonsky in the hospital while being furnished care or treatment therein by the Veterans' Administration, he leaving no spouse, next of kin or heirs gave "rise to a conclusive presumption of a valid contract for the disposition" in accordance with the act but subject to its conditions, of all property described in section 17, Title 38, USCA, owned by said decedent at death and as to which he died intestate. Sec 17a.

The rights of the United States to property of a decedent in cases falling within the purview of Sections 17, 17a, 17f, Title 38, USCA, do not arise because the property escheats to the United States. No question of escheat is involved. Such rights arise not by escheat but by virtue of the relations created under the terms of the statute. Under the provisions of the statute, upon the death of Felix Gonsky all the property owned by him vested immediately in and became the property of the United States as trustee for the sole use and benefit of the General Post Fund. However, any person claiming a right to such assets

may within five years after the death of the decedent file a claim on behalf of himself and any others claiming with the Administrator of Veterans' Affairs. Sec 17f.

In Title 38, Sec 450(3) USCA, it is said that "any funds in the hands of a guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, derived from compensation, automatic or term insurance, emergency officers' retirement pay, or pension, payable under said Acts, which under the law of the state wherein the beneficiary had his last legal residence would escheat to the State, shall escheat to the United States and shall be returned . . . to the Veterans' Administration, and shall be deposited to the credit of the current appropriations provided for payment of compensation, insurance, or pension."

Whether the term "escheat" used in said Sec 450(3) is wholly appropriate is not of controlling importance. (See Coakley v. Attorney General, 318 Mass 508, 62 NE2d 659; In re Lindquist's Estate, 25 Calif2d 697, 154 P2d 879.) The question is not whether more apt language might have been employed, but what was the intention of Congress as evidenced by the provision as a whole. As was said by the Supreme Judicial Court of Massachusetts in Coakley v. Attorney General, supra:

"There can be no doubt that Congress intended that in a case like the present the net assets in questions should revert to the United States. The gift to the pensioner was subject to a sort of condition subsequent to that effect. It is of no importance that, as is contended, the reverter is not properly called an escheat, or that the common law does not recognize a limitation over after an absolute or fee simple estate. Kelley v. Meins, 135 Mass 231, 234. The will of Congress rises superior to the common law classification and qualities of estates. Congress may provide new and strange rules for the devolution of pension money. Sunderland v. United States, 266 US 226, 232, 233. County Commissioners v. Seber, 318 US 705, 708, note. Beaver v. Short, 300 Fed 113. The decisive thing is that the donor, the United States, has reserved the right to lay its hand upon the pension money or its proceeds in the very event that has hap-

pened. The act of Congress governs, and the United States is entitled to the property in question." 318 Mass at pp 510–511.

Sections 17, 17a, 17f, Title 38, USCA, make no reference to escheat and this case does not call for the determination of an escheat. In American Law, "escheat signifies reversion of property to the state in consequence of a want of any individual to inherit." Black's Law Dictionary, 3rd ed.

The laws of this state provide:

"All property, real and personal, within the limits of this state, which does not belong to any person or to the United States, belongs to the state. Whenever the title to any property fails for want of heirs or next of kin, it reverts to the state." NDRC 1943, 54–0102.

If property escheats to the State, the latter takes only the title which the party dying had, and none other. The estate passes just as the owner held it subject to all charges, liens and encumbrances. 3 Washburn on Real Property, 6th ed, p 64, sec 1874.

The property which Felix Gonsky owned at the time of his death was subject to an assignment which became effective immediately upon his death. According to the specific provisions of the Act of Congress, all personal property "as to which he (Felix Gonsky) died intestate including money and choses in action," owned by the said Felix Gonsky at the time of his death immediately vested in and became the property of the United States as trustee for the sole use and benefit of the General Post Fund. Section 17.

The county court has "exclusive original jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of accounts of executors, administrators and guardians, the sale of lands by executors, administrators and guardians, and such other probate jurisdiction as may be conferred by law." N Dak Const, Sec 111.

"The executor or administrator is entitled to possession of all the real and personal property of the decedent except the homestead and the other exempt property reserved by law to the surviving husband or wife or children. He must protect the real property from waste or other injury and collect the rents and

profits thereof until ordered to surrender the same, and must collect the goods, chattels, and other effects of the decedent, and the debts and demands of every description due to the decedent or accruing to the estate in his right, and must safely keep and dispose of the same according to law." NDRC 1943, 30–1304.

The executor or administrator of an estate "must make and return to the county court a true inventory and appraisement of all the real and personal property of the decedent which has come to his knowledge." NDRC 1943, 30–1501. He must sign the inventory and take and subscribe thereon an oath that the inventory contains a true statement of:

"1. All the estate of the decedent which has come to his knowl-edge and possession;

2. All money belonging to the decedent;

3. All just claims of the decedent against the affiant; and

4. All liens, mortgages, or other encumbrances on the real and personal property of the deceased." NDRC 1943, 30–1503.

Our statutes provide that whenever property which is not included in an inventory previously made comes to the knowledge of an executor or administrator he must make and return a supplementary inventory. NDRC 1943, 30–1509. It is apparent that in the performance of his duties an administrator must ascertain and determine at least "prima facie" what property belongs to the estate and should be inventoried as such. 1 Ross, Probate Law and Practice, sec 296, p 420; 1 Woerner, The American Law of Administration, 3rd ed, sec 154, p 523. Such determination must necessarily be made by the administrator in the orderly administration of the estate. But the determination is not final and "conclusive in another forum of the decedent's ownership." 1 Ross, Probate Law and Practice, 3rd ed, sec 296, p 420.

Our statutes authorize the county court to conduct an inquiry and hear evidence to discover property belonging to the decedent, and deeds, conveyances, bonds, contracts and other writings which contain evidence of or tend to disclose the right, title, interest or claim of the decedent to any real or personal estate or any claim or demand. NDRC 1943, 30–1307. See, also, 2 Woerner, The American Law of Administration, 3rd ed, sec

325, at p 1026 et seq; 1 Ross, Probate Law and Practice, sec 310, at p 449 et seq. If it appears upon such inquiry that the person accused of having in his possession or under his control any such property or knowledge of any deeds, conveyances, bonds, contracts or other writings which tend to disclose the right, title, interest or claim of the decedent to any real or personal property or demand or any lost will of the decedent the county court may make an order requiring such person to disclose his knowledge thereof to the executor or administrator. NDRC 1943, 30–1308. Any person interested in the estate may appear and file his exceptions in writing to the account of the administrator and contest the same. NDRC 1943, 30–2013. The petition for the distribution of the estate may be controverted and any respondent may claim any share or interest which he believes himself entitled to receive. NDRC 1943, 30–2108.

Upon the final settlement the court must proceed to distribute the residue of the estate in the hands of the executor or administrator among the persons who by law are entitled thereto. NDRC 1943, 30–2105, 30–2110; see also Sections 8846 and 8849, CL 1913. Where "some of the original heirs, legatees or devisees may have conveyed their respective shares to other persons, such shares must be assigned to the persons holding the same in the same manner as they otherwise would have been assigned to such heirs, legatees or devisees." NDRC 1943, 30–2122.

"Upon application for distribution after final settlement of the accounts of administration, if the decedent was a nonresident of the state leaving a will which has been duly proved or allowed in the state, territory, or district of his residence, and an authenticated copy thereof has been admitted to probate in this state, and it is necessary in order that the estate or any part thereof may be distributed according to the will, that the estate in this state should be delivered to the executor or administrator in the state or place of his residence, the court may order such delivery to be made, and, if necessary, may order a sale of the real estate and a like delivery of the proceeds." NDRC 1943, 30–2131.

The Constitution confers upon the county court exclusive original jurisdiction in probate and testamentary matters and

the appointment of administrators. Under the laws of the State the administrator is charged with the duty of taking possession of and inventorying all the properties belonging to the estate and where necessary to conduct inquiry to ascertain the existence of properties belonging to the estate, and where properties have been omitted to prepare a supplemental inventory. The authority of the county court to take into its possession and keep and distribute property applies only to property of the estate. The court has no authority to take into its possession and keep and dispose of property which does not belong to the estate. The grant of jurisdiction to the county court and the duties imposed upon it imply the incidental power to do all things reasonably necessary for the administration of justice within the scope of its jurisdiction. 1 Woerner, The American Law of Administration, 3rd ed, sec 154, p 523 et seq; 14 Am Juris, Courts, sec 171, p 370 et seq; 21 CJS, Courts, sec 88, p 136 et seq. And where upon final settlement and distribution it clearly and indisputably appears that there is property in the hands of the administrator which does not belong to the estate the county court may order that such property be restored to the person to whom it belongs. Such act will not be one in excess of the jurisdiction of the county court but will be an act within its jurisdiction in the performance of its duties in the administration of the estate.

In this case at the time of the final settlement and the distribution of the estate all the property of Felix Gonsky in the hands of the administrator and listed in the final account was the property of the United States as trustee for the sole use and benefit of the General Post Fund. No part of such property fell within the provisions of NDRC 1943, Sections 30–2509 and 30–2510. There is no authority in law for the county court to order that the administrator pay the same to the Treasurer of the State of North Dakota under the provisions of these sections. There is no dispute as to the facts, and under the Act of Congress there is no basis for controversy as to the ownership of the assets. The recitals in the final decree of distribution show that the conditions were such that under the specific terms of sections 17, 17a, 17f, Title 38, USCA, there was no residue in

the estate which might escheat to the State for want of an heir capable of succeeding to such property under the laws of the State of North Dakota. All such residue was the property of the United States under the provisions of the Act of Congress and this fact was clearly and forcibly called to the attention of the court by the petition filed by the United States of America. It is true that in that petition it was asked that the property be "escheated to the United States." This was probably due to the fact that the petition referred to both sections 17 and 450(3) of Title 38, USCA, and the latter section refers to escheats, although as pointed out by the Supreme Judicial Court of Massachusetts in Coakley v. Attorney General, supra, the term escheat is not strictly accurate and means a reverter rather than an escheat. But this was not important. The facts that were presented to the court by the record in the case clearly showed that there was no property in the estate which the court had authority to order to be paid to the State Treasurer, and the petition of the United States constituted an objection by the United States to any attempt to dispose of the moneys in the hands of the administrator as assets of the estate. There was no basis under the laws of the State for an adjudication that the moneys be paid to the State Treasurer. The property and moneys directed to be paid to the State Treasurer belonged to the United States and the county court had no authority to direct it to be paid to the State Treasurer under NDRC 1943, 30–2509, 30–2510.

The Act of Congress provides: "If there be administration upon the decedent's estate such assets, other than money, upon claim therefor within the time required by law, shall be by the administrator of the estate delivered to the administrator of Veterans' Affairs or his authorized representative, as upon final distribution; and upon the same claim there shall be paid to the Treasurer of the United States for credit to said Post Fund any such money available for final distribution. . . . Such payment or transfer shall constitute a complete acquittance of the transferor with respect to any claims by any administrator, creditor, or next of kin of such decedent." Title 38, Sec 17d, USCA. The assets in question here should be transferred and

delivered to the United States. Coakley v. Attorney General, supra; In re Bonner's Estate, 192 Misc 753, 80 NYS2d 122.

The decision appealed from is reversed and the cause remanded for further proceedings in conformity with this opinion.

MORRIS, C. J., and GRIMSON and BURKE, JJ., concur.

SATHRE, J., did not participate.