UNITED STATES of America

v.

The BOARD OF COMMISSIONERS OF PUBLIC SCHOOLS OF BALTIMORE CITY.

Civ. No. T–76–1376.

United States District Court, D. Maryland.

June 6, 1977.

Jervis S. Finney, U. S. Atty., and Richard D. Bennett, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Benjamin L. Brown, City Solicitor, Paul S. Sugar and Milton Ely, Asst. City Solicitors, Baltimore, Md., for defendant.

THOMSEN, Senior District Judge.

In this action the United States seeks to recover funds which it claims are payable to the Veterans' Administration (VA), an agency of the United States, under § 3202(e) of Title 38, U.S.C. (Veterans' Benefits), which provides in pertinent part:

"Any funds in the hands of a * * * person legally vested with the care of the beneficiary of his estate, derived from benefits payable under laws administered by the Veterans' Administration, which under the law of the State wherein the beneficiary had his last legal residence would escheat to the State, shall escheat to the United States and shall be returned * * * to the Veterans' Administration, and shall be deposited to the credit of the applicable revolving fund, trust fund, or appropriation."

Arthur Brown, an honorably discharged veteran of World War I, was awarded and paid monthly pension benefits by the VA under 38 U.S.C. § 521. For several years before his death on September 24, 1974, the payments were made to a duly appointed guardian of his estate. Brown, a resident of Baltimore City, Maryland, died intestate, leaving no person entitled to share in his estate under §§ 3–102 through 3–104 of the Estates and Trust Article of the Annotated Code of Maryland. The guardian turned over $6,568.18 to Brown's personal representative, who, after paying costs, commissions and funeral expenses, distributed the balance of $4,737.32 to the Board of School Commissioners of Baltimore City under the applicable Maryland statute, § 3–105 of the Estates and Trust Article. That section reads, in pertinent part, as follows:

"§ 3–105.  Escheat.

"(a) *General.*—If there is no person entitled to take under §§ 3–102 through 3–104, the net estate shall be converted to cash and paid to the board of education in the county in which the letters were granted, and shall be applied for the use of the public schools in the county." [1]

The United States thereafter made demand on the Board to pay the money over to the VA, citing 38 U.S.C. § 3202(e), supra, and when that demand was refused brought this action. The Board takes the position that the funds did not escheat to the State, but to the Board, and that § 3202(e) does not apply.

The development of the law of escheat and the history of the Maryland statute support the government's position rather than that of the Board. Originally, escheat was an incident not of sovereignty, but of tenure. In American law escheat "signifies a reversion of property to the state in consequence of a want of any individual competent to inherit. The state is deemed to occupy the place and hold the rights of the feudal lord." Black's Law Dictionary, 4th ed., citing 4 Kent Comm. 423, 424, and several American cases. For more recent statements to the same effect,

---

1. Baltimore City is treated as a county for many purposes.

see *In re Melrose Ave. in the Borough of Bronx,* 234 N.Y. 48, 136 N.E. 235, 237 (1922) (Cardozo, J.); *In re Lindquist's Estate,* 25 Cal.2d 697, 154 P.2d 879 (1944); *In re Gonsky's Estate,* 79 N.D. 123, 55 N.W.2d 60 (1952); *In re Hammond's Estate,* 3 N.Y.2d 567, 170 N.Y.S.2d 505, 147 N.E.2d 777 (1958); and *In re Estate of O'Brine,* 37 N.Y.2d 81, 371 N.Y.S.2d 453, 332 N.E.2d 326 (1975).

In Maryland, since the Eighteenth Century, the legislature has passed a series of statutes dealing with escheat. Since 1798 they have generally provided that the funds of a person dying intestate without heirs shall belong to the state and be paid to educational institutions, particularly those providing free education. For three decades before 1969, the applicable section of the Maryland Code provided: "If there be no widow or relations of the intestate within the fifth degree, which shall be reckoned by counting down from the common ancestor to the more remote, the whole surplus shall belong to the State, and shall be paid to the board of county commissioners of the county wherein letters of administration shall be granted upon the estate of the deceased, for the use of the public schools of said county." [2]

In 1969, Art. 93, dealing with decedents' estates was entirely rewritten and reenacted by ch. 3, § 1 of the Laws of Maryland, 1969. Section 3–105 of that codification read as follows:

"§ 3–105 Escheat

"(a) *Generally.*—If there is no person entitled to take under §§ 3–102 through 3–104, the net estate shall be converted to cash and paid to the board of education in the county in which the letters were granted, and shall be applied for the use of the public schools in such county.

"(b) *Refund.*—If after payment has been made to the board of education a claim for refund is filed by a relative within the third degree living at the decedent's death, or by the personal representative of such relative, and such claim is allowed, such claimant shall be entitled at any time to a refund, without interest, of any sum so paid."

The Revisor's Comment stated:

"This section combines the provisions of former § 152 and § 153, and extends the right to obtain a refund to the proceeds of real property. See § 47 of Article 46, which was also repealed. The substance of these sections is preserved but the language has been modernized and adjusted to conform to the format of the proposed statute. The earlier law is discussed in Sykes, §§ 191 through 194."

The Laws of Maryland, 1974, ch. 11, § 2, recodified Article 93, now headed "Annotated Code of Maryland—Estates and Trusts". Section 3–105 was included, with no change in subsection (a) of § 3–105 and an insignificant change in subsection (b). The comment to former Article 93, § 3–105, quoted above, was repeated.[3]

■ From this history it appears that by § 3–105 and its predecessors, the legislature intended to exercise the state's right of escheat, and to direct to what public body the escheated funds should be paid. It is true, as defendant argues, that the funds covered by § 3–105 are not appropriated to the boards of education in a state budget, but are directed by the statute to be paid by the personal representative directly to the appropriate board. That does not mean, however, that the county or the city or the appropriate board has a right of escheat;[4] it means that the state has exercised its

---

**2.** See list of statutes appended to Art. 93, § 152 of the Annotated Code of Maryland, 1964. The following section provided:

"If any legal representative shall appear after payment has been made under § 152, the board of county commissioners receiving such payment shall pay the same to such representative; but no collateral more remote than brothers' and sisters' children shall claim under this section."

**3.** The heading "§ 3–105 Escheat" was part of the 1974 act itself, and was not added by an editor.

**4.** No county or city in the State possesses the right of escheat. See *Novak v. Orphans' Home,* 123 Md. 161, 168, 90 A. 997 (1914).

right of escheat and that the funds be paid to the appropriate board directly rather than by inclusion in an annual budget.

■ The right of a board under the statute to receive the funds is a vested right, and cannot be divested by a retroactive statute, *Rock Hill College v. Jones, Adm'r,* 47 Md. 1 (1877). But the state cannot give a better right to such funds than the state itself has by reason of its right of escheat. The Board's right to receive the funds under § 3–105 is subject to any paramount claim by the United States which the Constitution allows the United States to assert and requires the state to recognize. The claim which the United States is asserting in this case is such a paramount claim.

■ The intent of Congress in passing § 3202(e) was that a state should not benefit from funds originally provided a veteran by the federal government. *In re Hammond's Estate,* supra; *In re Gonsky's Estate,* supra; *In re Lindquist's Estate,* supra; *Coakley v. Attorney General,* 318 Mass. 508, 62 N.E.2d 659 (1945). The funds which are covered by § 3–105 help support the state educational system and therefore benefit the state; when such funds derive from veterans' benefits, 38 U.S.C. § 3202(e) requires that they be paid to the VA.

The Board also argues that even if Brown's net estate escheated to the state under Art. 93, § 3–105, a part of that estate did not derive from benefits payable under laws administered by the VA, and, therefore, such part did not escheat to the United States under 38 U.S.C. § 3202(e).

When Union Trust Company was appointed guardian of Brown's estate, over seven years before his death, there was turned over to it $458.82, none of which has been shown to have derived from VA benefits. Thereafter, the guardian received pension benefit payments in the amount of $22,256.00. Over the years the guardian spent most of the funds for Brown's support, took its lawful commissions and invested part of the pension benefits in a common trust fund, from which it received dividends of $1,596.86 and received

$5,773.49 when the units were sold after Brown's death.

The guardian turned over $6,568.18 to Brown's personal representative after Brown's death. Taxes, commissions and expenses of the estate reduced that amount to $4,737.32, and that sum was paid to the Board of School Commissioners. The Board claims that the original $458.82 received by the guardian when he was appointed and the $1,596.86 dividends received from the common trust fund were not "derived from benefits payable under laws administered by the VA," and therefore did not escheat to the United States under 38 U.S.C. § 3202(e).

The United States properly conceded at oral argument that the $458.82 should be deducted from the amount payable to it. There was no showing that the $458.82 was derived from VA benefits; nor has any reason been shown for applying a first in, first out rule. On the other hand, the parties agree that all of the shares in the common trust fund were purchased with VA benefit payments. The court concludes, therefore, that the income received from the trust fund "derived" from VA benefit payments. Under all the circumstances the court concludes that none of the expenses of administration should be charged against the $458.82; nor should that amount be included in the amount which the VA is entitled to receive under § 3202(e).

Judgment will, therefore, be rendered in favor of the plaintiff for $4,278.50 (i. e., $4,737.32 less $458.82), without interest.